SMITH, administrator, *et al. vs.* CUYLER *et al.*

1. Where both parties to an action at law are content with the jurisdiction, and desire the action to proceed, a court of equity will not enjoin it at the instance of third persons without very imperative reasons.
2. If the action should result in a collusive judgment, such judgment will be open to attack whenever and wherever it may come in conflict with the rights or the interest of third persons.
3. A trustee under bond will be liable upon his bond for any injury to the beneficiaries resulting from his failure to resist unjust or unfounded claims against the estate he represents.
4. Though there be a domestic administrator with the will annexed, a foreign administrator, duly qualified at the testator's domicile, may bring suit in Georgia for any cause of action accruing to him respecting property in this State, but not for causes of action which had accrued to the testator.
5. A temporary injunction, which seems harmless for the present, against interfering with stocks, debentures, dividends and interest, though of doubtful necessity, may be left to stand until further order of the chancellor, or till the final hearing.

March 19, 1887.

Administrators and Executors. Judgments. Injunction. Before Judge ADAMS. Chatham County. At Chambers, November 27, 1886.

Alice H. Cuyler and Mary C. C. Cuyler filed their bill against Henry H. Smith, administrator with the will annexed of John M. Cuyler, deceased, Thomas H. Cuyler, Estelle Smith (formerly Cuyler), John M. Johnston, the Central Railroad and Banking Company and the Southwestern Railroad Company, alleging, in brief, as follows:

John M. Cuyler died testate in New Jersey, leaving a considerable estate in Georgia, and under his will complainants were legatees and entitled to the income from the estate. Alice H. Cuyler and John E. Ward duly qualified as executrix and executor, and filed with the railroad companies proper notice of such qualification, and took possession of certain shares of stock and debentures therein, forming a part of the estate of their testator, and received dividends until interrupted in the manner hereafter stated. Thomas H. Cuyler and Mrs. Estelle Smith claimed that the estate of one William H. Cuyler was indebted to them severally, and that John M. Cuyler was the surety on the bond of John M. Johnston, who was the administrator of William H.; and this claim of indebtedness was based on a decree to which John M. Johnston, administrator, and John M. Cuyler were parties. The bill denies this indebtedness. Henry H. Smith, a citizen of Floyd county, Ga., the husband of Mrs. Estelle and the brother-in-law of Thomas H. Cuyler, obtained letters of administration on the estate of John M. Cuyler from the court of ordinary of Chatham county. Complainants were non-residents, and this appointment was without their knowledge or consent. Shortly after it, Mrs. Smith and Thomas H. Cuyler brought suits in the city court of Savannah to recover their alleged claim against the estate of Wm. H. Cuyler against John M. Johnston, administrator, and Henry H Smith, administrator with the will annexed, the former as principal and the latter as representative of the estate of the surety of Johnston's official bond. Smith was appointed administrator solely to assist his wife and brother-in-law in the collection of their claim, was permitting them to sue him within a few months after his appointment, not claiming the twelve months exemption allowed by law, and was aiding them to obtain unjust judgments against the estate he represented. The New Jersey executor and executrix could not, under the law of Georgia, interpose and make themselves parties to the suits in the city court

and defend, nor could complainants do so, the act of the legislature of Georgia allowing this to be done having been declared unconstitutional. The foreign executor and executrix could not bring suit to protect the interest of the estate, there being an administration in Georgia. If the claims sued on be just, they aggregate less than $5,000. The inventory and appraisement of the estate in Georgia of John M. Cuyler shows land valued at $1,700, and the railroad stocks and debentures, making the entire estate in Georgia aggregate $23,867. In applying for administration, Smith stated the value of the estate to be about $4,000 and gave bond for $8,000. He had no right to administer, and was never properly selected by any of the parties entitled to select an administrator. He claims the right to control the stock and scrip and to collect the dividends thereon, and has proceeded to assert that right by notice to the railroad companies. Complainants need the dividends so arising. Smith will not defend the suits in the city court. Johnston is unable to do so, and has fully administered the estate of Wm. H. Cuyler. The prayers were to restrain the two suits in the city court; that complainants be afforded an opportunity to be heard and defend their interest in the estate under the will; that Smith be enjoined from interfering with the assets of the estate of John M. Cuyler, particularly with the stock and debentures; that the railroad companies be enjoined from transferring the stock and debentures to Smith as administrator, or from paying dividends and interest to him, or from withholding them from the executrix and executor of John M. Cuyler and from complainants as the beneficiaries under his will. ·

A restraining order was granted, and subsequently defendants moved to set it aside. On the hearing, the bill was read, together with the record of an equity cause in which Thomas H. Cuyler and Mrs. Estelle Smith were complainants and Johnston, administrator of Wm. H. Cuyler and John M. Cuyler, were defendants, in which the com-

plainants therein claimed an indebtedness to them. This was contested, and payment set up by way of defence. The jury in that case found in favor of Mrs. Smith $1,396.23, and in favor of Thos. H. Cuyler $1,018.25. The decree was not entered until later; it became dormant, and was revived and amended so as to be clearly a decree *de bonis testatoris*. These proceedings need not be stated more in detail.

It was admitted on the hearing of the motion to dissolve the restraining order that Geo. A. Mercer, Esq., as counsel for John M. Johnston, had filed demurrers and pleas in the suits in the city court. Smith's appointment as administrator also was shown. The chancellor refused to dissolve the restraining order, and the defendants excepted.

DENMARK & ADAMS, for plaintiff in error.

GEO. A. MERCER, for defendants.

BLECKLEY, Chief Justice.

Upon an administrator's bond two actions at law were brought, both of them against the principal and the administrator with the will annexed of the surety, the surety having died testate. The plaintiff in one was the wife of said administrator with the will annexed, and in the other his brother-in-law. The surety died domiciled in New Jersey. The chief beneficiaries under his will were his daughter and granddaughter. His executors qualified in New Jersey. Afterwards administration with the will annexed was granted in Georgia, not to either of the executors, but to a third person. Certain of the assets of the estate consisted of stock in two railroad companies in Georgia and some debentures or certificates of indebtedness issued by one of these railroad companies; and upon these assets dividends and interest had accrued and are now accruing.

The present bill was filed by the legatees named in the

v 78-42

will of the surety, and it seeks to enjoin the common law actions, and also to prevent any interference by the administrator in Georgia with the stock, the certificates or debentures, and with the dividends and interest accrued and accruing therefrom. A restraining order, which finally became an injunction by reason of the refusal of a motion to vacate it, was granted as to both objects ; and the present writ of error is prosecuted to reverse this grant of injunction. The bill alleges that the common law actions are founded upon claims which are not just, that there is a good defence to them, and that the administrator, being the husband of one of the plaintiffs and the brother-in-law of the other, will not make the defence ; and the complainants want to obtain control of that defence, so as to urge it and defeat the actions.

1. They have no right to do this; the administrator could pay these claims if he thought proper, just as he could retain a debt due to himself, or which he claimed as due to himself. He has a legal right to deal with demands against the estate as he thinks he ought, acting, of course, at his peril. There is no policy of the law to prevent an administrator from being friendly with creditors any more than with the heirs or legatees. The law, as announced from this bench years ago, considers that an estate, like everything else, is generally better off in the hands of its friends than in the hands of its enemies. *Moody vs. Moody*, 29 *Ga.* 522. It allows, subject to certain rules of precedence, any one interested to obtain letters of administration, and if persons interested do not choose to take letters, they are permitted to nominate the administrator. Code, §2494. It is not expected or intended (as a general rule) that the representative of any estate shall be disinterested. On the contrary, the law contemplates an interested party to represent the estate; and the representative can pay a debt to himself, or his wife, or any relative; or he can forbear to pay if he chooses; the law trusts him to determine who ought to

be resisted and who not. Thus the relationship between the plaintiffs in the common law actions and the administrator is no ground for interference by injunction. If the administrator could pay himself, he could pay his wife. Why not? And if he has a right to pay any debt he recognizes, who has a right to compel him to litigate and resist the payment? Here are parties at peace amongst themselves; other parties come in and seek to inaugurate a state of war. Let them wait until their own interest is prejudiced or perilled by the result of these proceedings, and then they can be heard. My own opinion is, that a judgment in favor of the wife, when it is obtained, will conclude nobody but the husband. It will make little or no difference in the standing of her claim as to other persons. I do not know the fact judicially, because as a judge I am a bachelor, but as a private individual I know that a man is no more capable of resisting his wife than he is of resisting himself. Indeed, he is rather less able to deny her suit than to defend against his own. A judgment obtained in amicable litigation by a wife against her husband is mere matter of form. To carry on such litigation is to play a sort of comedy, but we cannot permit these new parties to intervene and convert it into a tragedy. Let the wife plaintiff and the husband defendant coquette at will. There is nothing serious in the outcome, and it should abide the general rule, that where both parties to an action at law are content with the jurisdiction and desire the action to proceed, a court of equity will not enjoin it at the instance of third persons without very imperative reasons. And *a fortiori* should the action between brother-in-law and brother-in-law be left to the operation of the same general rule.

2. The apprehended judgments at law will, if collusive, be utterly harmless to these complainants, because, if collusive, the complainants can attack them anywhere and everywhere. A collusive judgment is open to attack whenever and wherever it may come in conflict with the

rights or the interest of third persons. Fraud is not a thing that can stand, even when robed in a judgment.

3. Treating the common law suits as involving matter for real litigation, of course the administrator is bound to make as good defence as he can or ought to make, and if he. fails in this duty, he will be responsible upon his bond for the consequences. If judgments are rendered that ought not to be rendered, and if they hurt these complainants, the administrator will be liable upon his bond. They do not allege that there is any insolvency or insufficiency of this bond. So they are in no danger. A trustee under bond will be liable upon his bond for any injury to the beneficiaries resulting from his failure to resist unjust or unfounded claims against the estate he represents. The injunction, therefore, ought not to have been granted as to these common law actions.

4. With respect to the other element, according to the allegations of the bill, these stocks and debentures are under the control of the foreign executors. The bill alleges that the dividends are to their credit on the books of the railroad corporations. These Georgia assets, as we understand the bill, have been reduced to possession by the foreign executors, and they are now controlling them. It is suggested that they cannot maintain an action in relation to them, because there is a domestic administrator, but we think they can. Though there be a domestic administrator with the will annexed, a foreign administrator duly qualified at the testator's domicile, may bring suit in Georgia for any cause of action accruing to him respecting property in this State, but not for causes of action which had accrued to the testator. Certainly foreign administrators or executors, as such, may have possession and control of property in this State, and when they have, our courts are open to them for its protection.

5. If the bill states the facts correctly, the foreign executors can sue for the interest and dividends that have accrued since they reduced the stocks and debentures to pos-

session; so there is no absolute need of an injunction to hold off the Georgia administrator. But the beneficiaries (the complainants) are by the terms of the will entitled to the income of these assets, and the bill shows they are dependent; one of them is young, needing means of education, etc.; they are dependent on the prompt receipt of these dividends for current expenses. While we can see no absolute necessity for the injunction, either as to *corpus* or income, yet the injunction appears to be doing no harm. A temporary injunction, which seems harmless for the present, against interfering with stocks, debentures, dividends and interest, though of doubtful necessity, may be left to stand until further order of the chancellor, or till the final hearing.

. Many very interesting questions have been argued ably and instructively, but we do not find it necessary to decide any of them at present; and from some experience, I will assure counsel that a decision pronounced upon a mere *ad interim* injunction, is a very unsatisfactory light by which to control grave and important litigation. There is not pressure enough upon the court. In order to get good law from a court, you have to put on pressure, and constrain it to deal with the exact questions in their ultimate form. In the record as discussed are points which ought to be postponed until they have to be adjudicated with a view to control the ultimate destiny of the case; and it would be improper in us, under the comparatively slight pressure which we feel in disposing of this injunction, to undertake to rule them. We accordingly leave them open.

The injunction is modified so far as to relieve the common law actions from its operation, and to that extent the judgment below is reversed.