### CRAWFORD *v.* WILLIAMS *et al.*

1. The motion to dismiss the writ of error is without merit.
2. The petition set out a cause of action, and the judgment dismissing the same on general demurrer was erroneous.

No. 1203. MAY 14, 1919.

Equitable petition. Before Judge Wright. Whitfield superior court. October 19, 1918.

As amended, the petition alleges substantially the following: Williams sold to Segers seven lots of land among which were two lots called the Spann and Prater lots. The consideration for all of the lots was $16,000, payable $1,000 in cash and the balance in installments evidenced by promissory notes, the first of which, for the principal sum of $5,500, became due January 1, 1915. Williams verbally agreed with Segers that upon anticipation of the payment of this note an abatement of the interest and $100 of the principal would be allowed, and that the Spann and Prater lots would be conveyed to Segers. Before its due date Segers actually

paid Williams considerably more than the amount of the note. He demanded of Williams conveyance of the two lots named. One of Segers' creditors was at this time pressing him for payment of a debt. Williams stated to Segers, if the latter would make to him a bill of sale covering his personal property and leave the State until the trouble with this creditor "blew over," or its debts and judgments should be settled in some way, he (Williams) could, in the event of a levy upon the personal property, claim and hold same for the protection of Segers. At the same time Williams persuaded Segers not then to insist upon conveyance of the two lots of land; telling him that he could not immediately give the deed, as the notes had been placed in a Chattanooga bank and he would have to get the note which had been paid, but promised to convey them later. Segers demurred at first to this scheme, but through his influence and power Williams prevailed in procuring the same to be carried out. After a considerable absence from the State Segers again demanded conveyance of the two lots, which Williams then declined to make. Williams brought suit against Segers on all of the purchase-money notes, including the one due January 1, 1915, which had been paid. Segers defended, and the jury found that he was entitled to conveyance of the Spann and Prater lots in accordance with the verbal agreement. Williams' motion for a new trial was denied, and he excepted. Pending the decision by the Supreme Court Segers executed to Crawford a lease and option to buy the two lots specifically referred to, which was duly recorded in the office of the clerk of Whitfield Superior Court. With the knowledge of Williams, Crawford entered and began testing for minerals. The Supreme Court reversed the judgment refusing Williams a new trial, and pending retrial Crawford discontinued his operations on the land. On the day when the case was to be retried in the court below Crawford heard that Segers and Williams were about to settle and compromise said lawsuit. He made objection to Segers, and received his promise that no settlement would be made. Believing that Segers would prosecute his defenses and gain said suit, Crawford left the city of Dalton on the morning set for the trial, and, returning late in the afternoon, found that the suit of Williams against Segers had been secretly compromised upon the following terms: It was to be consolidated with another suit which Williams had brought against Segers;

all of Segers' defenses were to be withdrawn; Williams was to have judgment against Segers for the full amount of the purchase-money notes, $15,000, with interest, attorney's fees, and costs, and the judgment was to be made a special lien upon the land, including the two lots leased and "optioned" to Crawford; Williams to pay Segers $3,000, and to accept in settlement of his judgment whatever amount the land should bring at sheriff's sale. It is alleged, that the matter was handled in this way in fraud of and in order to defeat the rights of Crawford under his lease and option to buy; that at the sheriff's sale of the land, in Williams' presence, Crawford made public announcement of the fact that he held the lease and option upon the Spann and Prater lots, and that any purchaser would buy them with full notice of his claims thereunder. Williams bought all of the land for the sum of $9,000. He then conveyed certain interests to other parties, all of whom were made defendants in this suit, and who are alleged to have taken their conveyances with full knowledge and notice of the plaintiff's rights under his lease and option to buy. It is also alleged, that Segers acquired, upon payment of the above-mentioned note, a perfect equity in the two lots of land named; that Williams held the legal title in trust for Segers; that Crawford desires to exercise, under the option made by Segers to himself, the right to purchase the two lots; that prior to the institution of this proceeding he tendered to Segers and Williams the amount named in the option, $3,500, and has tendered same to each of the other defendants, but it has been refused; that the consent judgment in the consolidated cause of Williams *v.* Segers was collusive, was for an amount greater than that sued for, was for a sum largely in excess of that owed by Segers to Williams; that, allowing proper credit for payments made by Segers to Williams, there was sufficient property to satisfy his judgment exclusive of the two lots optioned to Crawford; that plaintiff had discovered upon said land valuable deposits of manganese ores, and intended to mine and ship the same; that the mining and shipping of these ores by the defendant Fitzgerald will materially decrease the value of the property; that he is ready, willing, and able to pay the amount of $3,500, and will do so whenever it is determined who is entitled to receive the same; and that Segers is insolvent. He prayed: for injunction to prevent the mining and shipping of ores by Fitzgerald; that all

the defendants be enjoined from interfering with his possession of and mining operations upon said two lots of land; that his lease and option be decreed to be valid and binding; that upon payment of $3,500 the fee-simple title to said property be decreed to be in him, free from all incumbrances; that all the defendants be enjoined from deeding, liening, encumbering, or disposing of said two lots of land; that the contract between Williams and Segers settling the lawsuit between them, the judgment therein, the sheriff's deed to Williams, the deed from Williams to other defendants, and the executory contract made by Williams for the sale of the land to Fitzgerald, in so far as they appertain to these two lots of land, be declared null and void and delivered up and canceled; that plaintiff have specific performance by each of the defendants in order that the free unincumbered title to said two lots of land may be placed in him, and, if this for any reason cannot be had, that the court assess such damages as the law and facts may entitle him to; and for general relief.

The petition was dismissed on general demurrer, and the plaintiff excepted. Defendants in error moved in this court to dismiss the writ of error, on the ground of insufficient service on Segers, the service having been effected by the sheriff, who was a party defendant as to the cancellation of the deed made by him as sheriff. Segers afterwards acknowledged service, waiving all defects.

*Neel, Finley & Neel* and *Paul F. Akin,* for plaintiff.

*W. E. Mann, W. C. Martin,* and *Maddox, McCamy & Shumate,* for defendants.

GILBERT, J. 1. The motion to dismiss the writ of error is without merit.

2. The case is on exceptions to the dismissal of the petition on general demurrer. The observations which follow are based on the familiar rule that the allegations of the petition considered on demurrer are accepted as true. This court has already held that the allegations in regard to the payments of money by Segers to Williams and the verbal agreement by Williams to convey designated lots of land to Segers set out a cause of action. *Williams v. Segers,* 147 *Ga.* 219 (93 S. E. 215). Upon proof of the facts alleged Segers would have been entitled to a decree placing the title in him as effectually as if Williams had executed a deed conveying the same. Segers was in possession. Crawford, relying

9

upon the allegations made in the pleadings in the pending litigation between Williams and Segers, obtained a written contract of lease and option to purchase. The lease provided for the mining of minerals on a royalty basis, and the contract of purchase provided that it might be exercised upon payment of thirty-five hundred dollars in cash on or before August 3rd, 1918. The contract recited a "consideration of one dollar paid lessor by lessee and the mutual benefits which will flow to both parties hereto by the fulfillment of this lease." This was not a unilateral contract, but on the contrary was supported by a valuable consideration including mutual benefits, and therefore was valid and binding. *Nathans* v. *Arkwright,* 66 *Ga.* 179, 186; *Simms* v. *Lide,* 94 *Ga.* 553 (21 S. E. 220); *Black* v. *Maddox,* 104 *Ga.* 157 (30 S. E. 723); *Columbus R. Co.* v. *City Mills Co.,* 135 *Ga.* 626 (70 S. E. 242). Thereafter Williams and Segers settled their litigation upon terms mutually satisfactory to themselves, Williams obtaining a consent decree in his own favor for a sum larger than that sued for, while Segers received under the agreement the sum of three thousand dollars in cash. The consent decree provided that it should be a special lien on the land. The option contract was obtained by Crawford pending the litigation but prior to the decree. "Decrees ordinarily bind only parties and their privies; but a pending suit is a general notice of an equity or claim to all the world from the time the petition is filed and docketed; and if the same is duly prosecuted and is not collusive, one who purchases pending the suit is affected by the decree rendered therein." Civil Code, § 4533. The pending suit was notice to Crawford, and he certainly would have been bound by any judgment duly prosecuted and not collusive. The allegation that the decree was obtained by consent does not necessarily negative the theory that it was duly prosecuted; but the petition affirmatively alleges that it was not duly prosecuted, that the judgment rendered in accordance with the agreement "was in fraud of plaintiff's rights," and that it was a collusive judgment. Whether or not these allegations were sufficient to withstand a special demurrer we do not decide, because the petition was dismissed on general demurrer, and it is with that judgment that we are called upon to deal. Accepting, therefore, as true the allegation that the agreement and the judgment rendered thereon was in fraud of plaintiff and was collusive, it cannot prevail over whatever rights

Crawford obtained under his written contract with Segers. It is insisted, however, that Crawford had an adequate remedy at law. Even if the injury is reparable in damages, a money judgment against Segers would not be adequate compensation, because he is insolvent No duty rested upon Crawford to intervene, because he was not bound to anticipate fraudulent acts of the parties nor fraudulent conclusion of the litigation; upon the contrary he had the right to assume that the litigation would be conducted fairly and honestly and duly prosecuted to the end sought in every legal investigation, that is, the discovery of truth. Since Williams obtained his consent agreement with full knowledge of the rights of Crawford, and since all of his vendees obtained their rights from Williams with full notice, none of the conveyances by Williams nor the judicial sale at which Williams was the purchaser can prevail against the legal rights to which Crawford was entitled under his written contract with Segers. Since all of the parties who have acquired conveyances of the land hold them in subjection to the rights of Crawford, a court of equity will compel them by proper decrees to carry out the contract of Segers, provided Crawford duly complies with his part of the contract. It is insisted, however, that Crawford has not made an unconditional tender, as required by law, of the thirty-five hundred dollars which he agreed to pay. We think there is no merit in this contention. The petition alleges a tender to both Segers and Williams. Prior to the filing of the suit Segers put it beyond his power to comply with his contract. When Crawford filed his suit in equity, alleging his ability and willingness to pay and his readiness to comply with his contract, and asking for an adjudication of his rights, there was a substantial compliance in the matter of tender. *Kerr* v. *Hammond,* 97 *Ga.* 567 (25 S. E. 337). It is contended that Crawford is privy to Segers, and that, Segers being estopped by his scheme with Williams to defeat and defraud his creditors, Crawford is also estopped from asserting any right or interest in the land. Under the allegations it is not clear that in entering into the scheme devised by Williams Segers did so with the intention of defrauding his creditors. The transaction, as alleged, has the appearance more of ignorance yielding to cunning for the benefit of the latter. If it be conceded, however, that the bill of sale to the personal property made by Segers to Williams was made with fraudulent intent, it does not

appear that the land was a part of the scheme. The excuse for delay in executing a conveyance by Williams to Segers of the land was that the papers were in a bank in Chattanooga and inaccessible at the time. The judgment may be res adjudicata as to Segers, because of his participation in the fraud and collusion against Crawford. "Such judgment will be open to attack whenever and wherever it may come in conflict with the rights or the interests of third persons. . . Fraud is not a thing that can stand, even when robed in a judgment." *Smith* v. *Cuyler*, 78 *Ga.* 654, 660 (3 S. E. 406) ; Civil Code, § 5964. The fact that Crawford knew of the judgment after it was rendered, and allowed Williams to purchase the land at the sheriff's sale and subsequently to convey it to other parties who went into possession and worked the same, will not constitute an estoppel against Crawford, when all of these facts were performed with full notice upon the part of everybody concerned.

The foregoing rulings are controlling as to the issues involved in the judgment sustaining the general demurrers. Those not specially dealt with are in the nature of special demurrers or are without merit.

                 *Judgment reversed. All the Justices concur.*