[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13345

_____

D.C. Docket No. 1:12-cv-03540-CAP

LINDA LEE,
HAROLD S. BRENNER,
WARNER-ROBINS FORD LINCOLN-MERCURY, INC.,

Plaintiffs-Appellees,

versus

UNIVERSAL UNDERWRITERS INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 11, 2016)

Before MARTIN, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Universal Underwriters Insurance Company ("Universal") appeals from the district court's grant of summary judgment to plaintiffs Linda Lee and Harold Brenner ("the Claimants").  Lee's husband died and Brenner was seriously injured in a car crash that resulted from a negligent repair to a vehicle owned by Lee's husband.  That repair was performed by Terry Holmes Ford Lincoln Mercury ("Terry Holmes Ford"), which was insured at the time of the repair by a Universal policy.  However, Universal denied coverage for Lee and Brenner's claims because the accident occurred after the insurance policy had expired, even though the negligent repair that led to the accident occurred while the policy was in effect.  Terry Holmes Ford entered into a consent agreement with the Claimants, who sued Universal for their damages.  The district court granted summary judgment in favor of the Claimants.  After careful review and with the benefit of oral argument, we affirm.

I.

On June 1, 2005, Darris Lee brought his 2000 Ford Expedition into Terry Holmes Ford, a car dealership in Georgia, to have recall repairs performed.  A service technician replaced the speed control switch on the vehicle.  On December 11, 2008, Darris Lee was driving the Expedition with Brenner as a passenger when he tried to brake as he approached slowing traffic.  Unable to stop or slow down, and to avoid collision, Darris Lee drove onto the grass shoulder of the road and lost

2

control of the vehicle.  The vehicle rolled over several times and both occupants were ejected.  Darris Lee died at the scene of the accident and Brenner suffered severe injuries.

An inspection done after the accident revealed that during the 2005 repair the technician bent and damaged the cruise control cable, which became increasingly damaged with continued use of the cruise control over time.  This damage eventually caused the vehicle's throttle to stick open, which caused Darris Lee to lose control of the vehicle.

On the date the vehicle was repaired, Terry Holmes Ford was covered (under its legal name of Warner Robins Ford) by a Universal insurance policy.  However, the policy was no longer active at the time of the accident, as it had been cancelled on June 1, 2007, a year and a half before the accident.  The policy had provided that:

> INSURING AGREEMENT – WE will pay all sums the INSURED legally must pay as DAMAGES . . . because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

The policy defined an "occurrence" as:

> "OCCURRENCE", with respect to COVERED POLUTION DAMAGES, INJURY Groups 1 and 2 means an accident, including continous or repeated exposure to conditions, which results in such INJURY or COVERED POLLUTION DAMAGES during the Coverage Part period neither intended nor expected from the standpoint of a reasonably prudent person.

3

. . . .

> All INJURY or COVERED POLLUTION DAMAGES arising out of continuous or repeated exposure to substantially the same general conditions will be considered as arising out of one OCCURRENCE.

Lee and Brenner each sued Terry Holmes Ford in state court in Georgia, alleging that the dealership negligently repaired Darris Lee's vehicle on June 1, 2005, and this negligence caused the December 11, 2008, crash. Terry Holmes Ford tendered both claims to Universal for payment, but Universal denied coverage because the "occurrence" date—which Universal deemed to be the accident date of December 11, 2008—fell outside the policy period.

After Universal denied coverage and refused to defend the suits, Terry Holmes Ford entered into a settlement agreement with the Claimants in which the dealership admitted liability for all counts alleged in the lawsuits. Terry Holmes Ford assigned to the Claimants its rights to recover under any applicable insurance policies, and the Claimants released their claims against the dealership.

With liability established, the parties submitted the issue of damages to an arbitrator, with over 100 pages of documentation related to Darris Lee and Brenner's injuries, earnings, and medical bills. There was also a brief adversarial hearing before the arbitrator. The arbitrator then awarded $4.2 million for Darris Lee's death and $1.2 million for Brenner's injuries. The Georgia court entered a

4

final consent judgment against Terry Holmes Ford for these amounts on June 1, 2012.

Lee and Brenner then sued Universal, also in Georgia state court, seeking indemnification on behalf of the dealership for the $5.4 million consent judgment. Universal removed the case to federal district court, which granted the Claimants' motion for summary judgment. The district court found the insurance policy to be ambiguous about what type of "occurrence" triggered coverage. It then applied the "basic rule of contract construction that ambiguities are construed against the drafter" and construed the policy in favor of the Claimants. The district court also found that Universal waived its affirmative defense that the settlement agreement was collusive and made in bad faith by failing to assert the defense in its responsive pleadings.

## II.

Universal first argues that the district court erred in finding the policy definition of "occurrence" was ambiguous. Universal asserts instead that the policy unambiguously required the injury to occur during the policy period. It argues alternatively that, even if the policy was ambiguous, the district court erred in not applying other general rules of contract construction before construing the contract against Universal as its drafter.

5

We review a district court's grant of summary judgment de novo. Mega Life & Health Ins. Co. v. Pieniozek, 516 F.3d 985, 989 (11th Cir. 2008) (per curiam). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact. Holloman v. Mail-Well Corp., 443 F.3d 832, 836–37 (11th Cir. 2006).

We also review the interpretation of an insurance contract de novo. LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1515 (11th Cir. 1997) (per curiam). Where our jurisiction is based on diversity, we apply the substantive law of the forum state, in this case the substantive law of Georgia. State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004). In applying Georgia law, "we are bound to decide the case the way it appears the state's highest court would." Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001) (quotation omitted).

Under Georgia law, "the starting point" in interpreting an insurance contract "is the contract itself." Anderson v. Mullinax, 497 S.E.2d 796, 796 (Ga. 1998). Georgia law requires us to give the words in an insurance contract "their usual and common meaning." Claussen v. Aetna Cas. & Sur. Co., 380 S.E.2d 686, 688 (Ga. 1989). Where the terms of a contract are "clear and unambiguous, and capable of only one reasonable interpretation," we look to the language of the contract alone.

6

Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 498 S.E.2d 492, 494 (Ga. 1998).

Where a contract is ambiguous, Georgia has codified a list of rules of construction that "shall be used" in interpreting it. O.C.G.A. § 13-2-2. One of these rules is that "[i]f the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred." Id. § 13-2-2(5). Other general interpretive rules that Universal argues apply to this case include giving "technical words" or "words of art" their "peculiar meaning"; looking to "the whole contract . . . in arriving at the construction of any part"; and reading the contract according to "[t]he rules of grammatical construction." Id. §§ 13-2-2(2), (4), (6). These rules of construction need not be applied in a particular order under the statute. See id. § 13-2-2.

In interpreting insurance policies as a particular form of contract, the Georgia Supreme Court has offered the following guidance:

> Three well known rules . . . apply. Any ambiguities in the contract are strictly construed against the insurer as the drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.

Boardman Petroleum, Inc., 498 S.E.2d at 494 (alteration in original) (quotation omitted). After deciding that an insurance policy is ambiguous, the Georgia Supreme Court will typically construe the policy against the insurer before

7

applying any other rule of construction.  See, e.g., W. Pac. Mut. Ins. Co. v. Davies, 601 S.E.2d 363, 368–69 (Ga. 2004); Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 659, 663–64 (Ga. 1996); Claussen, 380 S.E.2d at 687–88; Anderson v. Se. Fid. Ins. Co., 307 S.E.2d 499, 500–01 (Ga. 1983); Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563–64 (Ga. 1983).  But see York Ins. Co. v. Williams Seafood of Albany, Inc., 544 S.E.2d 156, 157–58 (Ga. 2001).

We agree with the district court that the policy's plain text is ambiguous about what type of "occurrence" triggers coverage.  The policy does not clearly state that it applies only to injuries that occur within the policy period, nor does it state specifically what type of "accident" during the policy period might trigger coverage.  The policy also identifies an "injury" as a distinct concept from an "occurrence" or "accident" for coverage purposes, suggesting that the "occurrence" trigger for coverage is not the same as the time of the injury.  We hold, as the district court did, that the policy could reasonably be interpreted as requiring either that the accident—here, the negligent repair—occur during the policy period, or that the injury resulting from the accident—here, the car crash—occur during the policy period.

The district court was correct to construe the insurance policy against Universal once it found the policy ambiguous.  We must "decide the case the way it appears the state's highest court would."  Royal Ins. Co. of Am., 242 F.3d at

1040 (quotation omitted).  The Georgia Supreme Court has made clear that once it determines that an ambiguity exists in an insurance policy, it will then look to the canon of interpretation that strongly construes an ambiguous contract against its drafter.  See, e.g., Boardman Petroleum, Inc., 498 S.E.2d at 494.  Here, we thus construe the ambiguous policy language against Universal and conclude that the policy covered the "occurrence" of the negligent repair that took place during the coverage period, even though the injury did not manifest until after the coverage period.  We affirm the district court's grant of summary judgment to the Claimants.

## III.

Universal also argues that the district court erred in finding that the insurer waived its ability to challenge the settlement agreement by failing to plead as an affirmative defense that the settlement resulted from collusion.  Universal did not challenge the settlement agreement on the basis of collusion or any other form of fraud until its motion for summary judgment.

We review for abuse of discretion a district court's procedural ruling on a party's waiver of an affirmative defense.  Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1350 n.9 (11th Cir. 2007).  We will affirm the district court unless it made a clear error of judgment or applied the wrong legal standard.  Id.

In a response to a pleading, a party "must affirmatively state any avoidance or affirmative defense, including . . . fraud."  Fed. R. Civ. P. 8(c)(1).  A party's

failure to raise an affirmative defense in the pleadings typically results in a waiver of that defense. Proctor, 494 F.3d at 1350. In diversity actions, state law determines whether a particular defense is an "avoidance or affirmative defense" under Rule 8(c). Id. However, federal law dictates "the manner and time in which defenses are raised and when waiver occurs." Troxler v. Owens-Illinois, Inc., 717 F.2d 530, 532 (11th Cir. 1983) (quotation omitted).

Georgia law expressly lists "fraud" as a defense that must be affirmatively pleaded. O.C.G.A. § 9-11-8(c). The Georgia Supreme Court has long treated fraud and collusion the same in determining whether a third party may attack an otherwise valid judgment. See, e.g., Higginbotham v. Adams, 14 S.E.2d 856, 857 (Ga. 1941); Stringer v. Wheeler, 129 S.E. 634, 634 (Ga. 1925); Smith v. Cuyler, 3 S.E. 406, 407 (Ga. 1887); see also O.C.G.A. § 9-12-17 ("[Third parties] may attack a judgment for . . . fraud or collusion, whenever and wherever it interferes with their rights, either at law or in equity."). In the context of insurance policy settlements, the Georgia Supreme Court has specifically treated "fraud, collusion and bad faith" as a single category of concern. See S. Guar. Ins. Co. v. Dowse, 605 S.E.2d 27, 29 (Ga. 2004).

The district court did not abuse its discretion in finding that Universal waived its affirmative defense that the settlement agreement was fraudulent and collusive. Though Universal used the term "collusion" instead of "fraud" in

10

attacking the consent judgment, the allegation amounts to a charge that the settlement agreement was fraudulent.  This charge of fraud is an affirmative defense that Universal was required to plead in its reply.  See Fed. R. Civ. P. 8(c)(1).  The district court did not abuse its discretion in applying Rule 8(c)(1) to find that Universal waived its fraud defense.  We affirm its procedural ruling on waiver.

After careful consideration of the record and the parties' briefs, and with the benefit of oral argument, we affirm the district court's decision.

**AFFIRMED.**

ANDERSON, Circuit Judge, concurring:

I concur in the result.