

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-13-2006

# IFC Interconsult AG v. Safeguard Intl

Precedential or Non-Precedential: Precedential

Docket No. 05-1817

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"IFC Interconsult AG v. Safeguard Intl" (2006). *2006 Decisions.* Paper 1510.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1510

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-1817 and 04-3933

IFC INTERCONSULT, AG,

Appellant in 05-1817

v.

SAFEGUARD INTERNATIONAL PARTNERS, LLC;
SAFEGUARD INTERNATIONAL FUND, L.P.

and

IFC INTERCONSULT, AG

v.

SAFEGUARD INTERNATIONAL PARTNERS, LLC,

Appellant in 04-3933

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-mc-00107)
District Judge:  Hon. Marvin Katz

Argued on November 14, 2005

Before:  ROTH, FUENTES and BECKER, <u>Circuit Judges</u>

(Opinion Filed: February 13, 2006)

Dennis R. Suplee, Esquire (ARGUED)
Nancy Winkelman, Esquire
Stephen A. Fogdall, Esquire
Schnader, Harrison, Segal & Lewis LLP
Suite 3600
1600 Market Street
Philadelphia, PA   19103

James D. Zirin, Esquire (ARGUED)
Sidley Austin Brown & Wood LLP
787 Seventh Avenue
New York, NY   10019

       Counsel for IFC Interconsult, AG


Kenneth I. Levin, Esquire (ARGUED)
Matthew J. Hank, Esquire
Pepper Hamilton LLP
Two Logan Square
18th & Arch Streets
Philadelphia, PA   19103

       Counsel for Safeguard International Fund, L.P.


Paul R. Rosen, Esquire (ARGUED)
Bruce Bellingham, Esquire
Spector Gadon & Rosen, PC
1635 Market Street
Seven Penn Center,  7th Floor
Philadelphia, PA   19103


       Counsel for Safeguard International Partners, LLC

## **O P I N I O N**

**ROTH**, Circuit Judge:

These consolidated appeals involve the propriety of the District Court's confirmation of an arbitration award and, in connection with that award, also involve the questions whether the District Court had ancillary jurisdiction over a garnishment action to collect on the award and whether the District Court properly denied summary judgment on the garnishment action. For the reasons stated below, we will affirm the District Court's confirmation of the arbitration award, reverse the District Court's ruling that it lacked ancillary jurisdiction over the garnishment action, reverse the District Court's alternative ruling denying the garnishor summary judgment, and direct that summary judgment be entered in favor of the garnishor.

## **I. Factual and Jurisdictional Background**

The parties to the arbitration are Safeguard International Partners, LLC (SIP) and IFC Interconsult, AG (IFC). SIP is the general partner of SIF Management, L.P., which manages a hedge fund, Safeguard International Fund, L.P. (the Fund).[1] In July 1996, SIP hired IFC to recruit investors for the Fund under an agreement (the Agreement) that stated that the parties would submit disputes under the contract to binding arbitration in Philadelphia, Pennsylvania, conducted by the American Arbitration Association. The Agreement did not specify what

---

[1] The partnership agreements are all governed by Delaware law.

court would have jurisdiction over the arbitration.

SIP claims that IFC and related parties began to defraud it and, as a result, SIP refused to pay IFC all of the finder's fees. In August 2002, IFC responded by initiating arbitration against SIP under the Agreement. IFC wanted George H. Carter and Carter's company, CFC, related parties who were also owed fees, to be involved in the arbitration; SIP did not. In September 2002, SIP filed a complaint for declaratory judgment in the United States District Court for the Eastern District of Pennsylvania to determine who was eligible for arbitration under the Agreement. The District Court dismissed the complaint for lack of subject matter jurisdiction because there was not complete diversity of citizenship between the multiple parties. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); 28 U.S.C. § 1332.

In October 2002, SIP filed a similar declaratory judgment action in the Philadelphia Court of Common Pleas. In November, the Court of Common Pleas ruled that the arbitration could proceed but only between IFC and SIP and with certain restrictions. Various motions and appeals followed, but eventually the parties reached a settlement. The Court of Common Pleas on February 26, 2003, reflected this settlement in the following order:

> The Court, having been advised that the within case has been settled, the case shall be marked "discontinued" on the prothonotary's docket and removed from the applicable list and inventory of pending cases. If the instant proceedings involve an appeal from a compulsory arbitration award, any lien from the arbitration award is released. This case may be restored to the trial list only upon written order of the team/program leader. This relief shall be requested by formal motion.

Safeguard Int'l Partners, LLC v. IFC Interconsult, AG, No. 02-0904980, Order of Feb. 26, 2003.

The case then proceeded to arbitration. In June 2004, the arbitration panel entered an award in favor of IFC in the amount of nearly four million dollars. IFC filed a application in the District Court for the Eastern District of Pennsylvania to confirm the award. SIP moved for a one month extension to respond, which the District Court granted.

Rather than responding on the merits, however, SIP filed an application in the Court of Common Pleas to modify, correct and/or vacate the arbitration award under the Pennsylvania Uniform Arbitration Act, 42 PA.C.S.A. §§ 7314-15 and for sanctions against IFC.[2]   SIP also filed a motion in the District Court to dismiss or stay IFC's confirmation petition under FED. R. CIV. P. 12(b)(6).[3]

Before the Court of Common Pleas addressed SIP's application to amend or vacate the arbitration award, the District Court ruled on IFC's application and SIP's motion in opposition. In the same order, the District Court granted IFC's application to confirm the arbitration award and denied SIP's

---

[2]   In the application to the Court of Common Pleas, SIP alleged that IFC violated the restrictions contained in the pre-arbitration order issued by that court. SIP additionally claimed that the arbitration panel lacked jurisdiction for some of its findings and erred as a matter of law because IFC had conceded SIP's defense that IFC took an unlawful secret profit, thereby voiding their Agreement.

[3] We note that this motion might have been brought more properly under FED. R. CIV. P. 12(b)(1) as it challenged the District Court's subject matter jurisdiction, not the IFC's failure to state a claim on which relief could be granted.

-5-

motion.  SIP then filed a motion to strike the judgment for lack of subject matter jurisdiction under FED. R. CIV. P. 60(b).  The motion remonstrated that IFC had improperly alleged diversity jurisdiction when filing its petition to confirm the arbitration award in the District Court.  The District Court denied the motion to strike the judgment because, although there is not complete diversity between the parties, there is federal subject matter jurisdiction based on the Federal Arbitration Act, 9 U.S.C. § 203.  SIP then filed a motion for reconsideration.  The District Court denied it and SIP appealed.

SIP presents two grounds to support its position that the arbitration award should not have been confirmed.  First, SIP argues that the District Court abused its discretion in declining to abstain from the exercise of jurisdiction over IFC's application to confirm the arbitration award.  Second, SIP contends that the District Court denied it an opportunity to be heard on the merits of IFC's application to confirm the award.

While the appeal has been pending, SIP has refused to satisfy the judgment.  For that reason, IFC initiated a garnishment action against the Fund under FED. R. CIV. P. 69.  The Fund is scheduled to liquidate on March 31, 2006, after which IFC will not be able to look to its assets to satisfy the judgment.   IFC's garnishment action is based on the Fund's contractual duty to indemnify SIP.  The Agreement of Limited Partnership of the Fund provides that:

> The Fund shall indemnify and hold harmless each Indemnified Person [including SIP] from any and all reasonable costs and expenses and all damages and claims which may be incurred or asserted against him or it by reason of . . . [its] connection to or relationship with the [Fund ] . . ..

Based on this language and on the Fund's interrogatory

-6-

responses, IFC moved for summary judgment on the garnishment action against the Fund. The Fund argued that it was not liable to SIP because the indemnification clause of the Agreement did not cover placement fee arrangements and because the indemnification was only for actual loss, so that SIP's mere liability did not trigger the indemnification obligation. The District Court denied IFC summary judgment because it found that a genuine issue of material fact still remained regarding whether the Agreement provided for loss or liability indemnification.

In the same order that denied summary judgment, the District Court dismissed the action for lack of subject matter jurisdiction. The District Court found that it did not have original federal question jurisdiction over the garnishment and that ancillary jurisdiction was not possible because the garnishment action relied "not only on different facts than the award-confirmation suit, but also upon a new theory of liability–essentially, breach of contract between the Fund and SIP." IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, No. 04-00107 (E.D.Pa.), Memorandum and Order of February 10, 2005. IFC then appealed both the denial of summary judgment and the dismissal for lack of subject matter jurisdiction.

We have jurisdiction over SIP's appeal under 9 U.S.C. § 16 and 28 U.S.C. § 1291 and over IFC's appeal under 28 U.S.C. § 1291.

**II. Discussion**

-7-

This consolidated appeal presents four separate issues, each presented in turn below.

**A. Did the District Court Abuse Its Discretion by not Abstaining under Colorado River from Hearing IFC's Motion to Confirm the Arbitration?**

Federal district courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Federal district courts may abstain from hearing cases and controversies only under "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. at 813 (internal quotations omitted). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," id. at 817 (internal quotations omitted), although there are certain categories of cases in which abstention is proper.

Colorado River categorized three situations in which the Supreme Court had previously found federal abstention proper: (1) cases that present federal constitutional issues that "might be mooted or presented in a different posture by a state court determination of pertinent state law," id. at 814; see R.R. Comm'r v. Pullman Co., 312 U.S. 496 (1941); (2) cases that present "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case then at bar," Colorado River, 424 U.S. at 814; see Burford v. Sun Oil Co., 319 U.S. 315 (1943); La. Power & Light Co. v. Thibodaux, 360 U.S. 25 (1959); and (3) cases in which federal jurisdiction has been invoked for the purpose of restraining valid, good faith state criminal proceedings, Colorado River, 424 U.S. at 816; see Younger v. Harris, 401 U.S. 37 (1971); Huffman v. Pursue, 420 U.S. 592 (1975)

-8-

(extending <u>Younger</u> to quasi-criminal civil proceedings).

None of these situations is implicated in this case. <u>Colorado River</u> also recognized a fourth category of cases in which abstention might be proper out of respect for "considerations of [wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817 (internal quotations omitted). SIP argues that the District Court should have abstained based on these principles underlying this fourth category of abstention.

We review the District Court's decision not to abstain for abuse of discretion, although the underlying legal questions that determine whether the case falls within the range in which the District Court may exercise discretion are subject to plenary review. <u>Riley v. Simmons</u>, 45 F.3d 764, 770 (3d Cir. 1995); <u>Grode v. Mut. Fire, Marine & Inland Ins. Co.</u>, 8 F.3d 953, 958 (3d Cir. 1993). As we stated in <u>United Services Automobile Ass'n v. Muir</u>:

> A district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements. Within these constraints, determination whether the exceptional circumstances required for abstention exist is left to the district court, and will be set aside on review only if the district court has abused its discretion.

792 F.2d 356, 361 (3d Cir. 1986) (citation omitted).

The threshold requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding. For judicial proceedings to be parallel, there must be identities of parties, claims, and time. As we noted in <u>Yang v. Tsui</u>, "[P]arallel cases involve the same parties and

'substantially identical' claims, raising 'nearly identical allegations and issues.'" 416 F.3d 199, 205 (3d Cir. 2005) (quoting <u>Timoney v. Upper Merion Twp.</u>, 66 Fed. Appx. 403, 405 (3d Cir. 2003)).

We have never required complete identity of parties for abstention. <u>See</u> <u>Trent v. Dial Med. of Fla. Inc.</u>, 33 F.3d 217, 224 (3d Cir. 1994). However, even when there is a substantial identity of parties and claims, abstention is still appropriate only when there are "ongoing, not completed parallel state proceedings," or else we would be considering issues of *res judicata*. <u>Bass v. Butler</u>, 258 F.3d 176, 179 (3d Cir. 2001). In this case, the proceedings in the Court of Common Pleas involved the parties in this appeal, as well as additional parties, but there is no identity of time.

Even if we were to view all issues concerning the arbitration as necessarily related, there was no action pending in the Court of Common Pleas when IFC moved the District Court to confirm the arbitration award. The Court of Common Pleas effectively discontinued jurisdiction over its case in February 2003, more than a year before our case came before the District Court for confirmation of the arbitration award. After a settlement was reached regarding the appeals from the Court of Common Pleas' declaratory judgment on eligibility for arbitration, the Court of Common Pleas discontinued the case and expressly noted that it could be reopened only by written order upon request by a formal motion. SIP never made such a motion, and the Court of Common Pleas issued no such written order. Even if we were to view SIP's Application to Modify or Vacate the Arbitration Award as constituting such a formal motion, we are unaware of any written order from the Court of Common Pleas that reopened the case. In any event, SIP filed the Application in the Court of Common Pleas only after IFC moved for confirmation of the arbitration award in the District Court. Therefore, we hold that the District Court was correct in

-10-

declining to abstain from exercising its jurisdiction. This lack of identity in timing would capsize SIP's Colorado River raft, even if it were to succeed in getting launched.

SIP, however, remonstrates that the Court of Common Pleas "retained jurisdiction both to enforce its Order and to adjudicate any other issue relating to the arbitration because that Court was seized of jurisdiction to supervise the arbitration from October, 2002." As an initial matter, we note that the record contains no such indication from the Court of Common Pleas. SIP has failed to cite any language but its own that purports to show such on-going jurisdiction. Even if the language were from the Court of Common Pleas and not from SIP, there is a difference between a court's retaining active jurisdiction and merely possessing the contempt jurisdiction that inheres in courts to enforce past orders. We do not believe that a passive reservation of enforcement jurisdiction is adequate to trigger abstention, and we are wary about extending jurisdiction from an adjudication of eligibility for arbitration into jurisdiction over the arbitration itself.

For us to conclude that this case presents the prerequisite situation of parallel proceedings, much less determine that a Colorado River analysis counsels in favor of abstention so strongly that the District Court abused its discretion by refusing to yield jurisdiction, requires heroic assumptions in favor of SIP. We are not inclined to make these assumptions given the disfavor in which we hold abstention, and see no need to proceed to our traditional abstention analysis.[4] Therefore, we

---

[4] The factors we consider in an abstention analysis are:

[1] which court first assumed jurisdiction over a relevant res, if any; [2] whether the federal court is inconvenient; [3] whether abstention would aid in avoiding piecemeal litigation; [4] which court first obtained jurisdiction; [5]

-11-

judge SIP's claim unseaworthy for a navigation of <u>Colorado River</u>'s rapids, and affirm the District Court's denial of SIP's Rule 12(b)(6) motion.

### B. Did the District Court Deny SIP an Opportunity to be Heard?

The District Court's Order of September 7, 2004, which confirmed the arbitration award, ably addressed SIP's argument about abstention but did not discuss the merits of confirmation beyond noting that "the arbitration was conducted within the rules established by the AAA and with no apparent objection by either party during the proceedings." Order of Sept. 7, 2004. The Order did, however, acknowledge SIP's arguments that the related parties "indirectly participated in the arbitration proceedings in violation of the Court of Common Pleas' November 1, 2002 Order" and that this involvement should void the arbitration award. <u>Id.</u>

SIP argues on appeal that by confirming the arbitration award before affording SIP an opportunity to challenge the award on the merits, the District Court violated FED. R. CIV. P. 12(a)(4)(A), thereby denying SIP its Fifth Amendment Due Process right to be heard.

The Federal Rules of Civil Procedure apply to proceedings under the Federal Arbitration Act (FAA) to the extent that the FAA does not provide its own procedure. FED. R. CIV. P. 81(a)(3). SIP claims that the FAA does not provide

---

whether federal or state law applies; and [6] whether the state action is sufficient to protect the federal plaintiff's rights.

<u>Rycoline Products, inc. v. C & W Unlimited</u>, 109 F.3d 883, 890 (3d Cir. 1997).

-12-

its own procedure for challenging a court's exercise of jurisdiction, so that FED. R. CIV. P. 12 applies. FED. R. CIV. P. 12(a)(4)(A) provides that:

> (4) Unless a different time is fixed by court order, the service of a motion under this rule alters these periods of time as follows:
>
>> (A) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action;...

FED. R. CIV. P. 12(a)(4)(A). SIP contends that FED. R. CIV. P. 12(a)(4)(A) was triggered because there was a pleading and a responsive motion that was denied.

SIP argues that IFC's application to the District Court for confirmation of the arbitration award was in the form of a pleading because the application featured numbered paragraphs like a pleading,[5] was entitled "petition," and allegedly lacked a supporting memorandum of law, a form of order, and a supporting affidavit, as required by LOCAL R. Civ. P. 7.1 of the United States District Court of the Eastern District of Pennsylvania. Thus, SIP believes that Rule 12(a)(4)(A) is triggered because IFC filed a pleading and SIP's jurisdictional Rule 12(b)(6) motion in response was denied. Therefore, according to SIP, it should have received 10 days after the denial of its Rule 12(b)(6) jurisdictional motion to file a responsive pleading arguing against confirmation on the merits. SIP contends that, because it believed that it would have a later

---

[5] FED. R. CIV. P. 10(b) provides "All averments of claim or defense shall be made in numbered paragraphs, the contents of which shall be limited as far as practicable to a statement of a single set of circumstances...." FED. R. CIV. P. 10(b).

-13-

opportunity to challenge the arbitration award on the merits, it did not make its merits arguments in its Rule 12(b)(6) motion and that the District Court's flouting of the Federal Rules of Civil Procedure denied SIP its procedural due process rights.

We disagree. As an initial matter, IFC's application to the District Court for confirmation of the arbitration award was a motion, not a pleading. The FAA requires that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions..." 9 U.S.C. § 6. For SIP to believe that IFC had filed a pleading, it had also to believe that IFC was not following the procedural requirements of the FAA to proceed by motion; SIP made no such objection.

Circumstances indicate that SIP was well aware that IFC was required to proceed by motion under the FAA and in fact did so, as demonstrated by SIP's own request for an extension of the 14-day period for filing an opposition to a motion under Local Rule 7.1(c), which expressly applies to "any party opposing the motion."

We regard SIP's arguments about the application's form as pure pettifoggery. Numbered paragraphs do not a pleading make. Indeed, SIP's own motion papers were in a numbered format. The title of "petition" certainly does not vitiate the substance of the application, and we are satisfied from our consultation of the record that the application was in fact accompanied by a brief, a proposed order, and an appropriate affidavit. The opening words of the application, "Petitioner IFC Interconsult, AG moves the court for an order," make clear that it was a motion, not a pleading. Thus, SIP cannot claim to be justifiably confused by the form of IFC's application. Had SIP in fact interpreted the application as a pleading, it should have preserved its rights by seeking additional time to move, answer, or otherwise respond pursuant to FED. R. CIV. P. 12(a). It did

-14-

not.

Because IFC proceeded by motion and not by pleading, SIP's argument fails on two points. First, because motion practice under the FAA was initiated, the relevant procedures are provided by FAA section 6, which requires that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions . . .." 9 U.S.C. § 6. Since IFC made its application by motion, the Federal Rules of Civil Procedure do not apply to the responsive motion practice, Productos Mercantiles e Industriales, S.A. v. Faberge USA, Inc., 23 F.3d 41, 46 (2d Cir. 1994) (FED. R. CIV. P. 12(b) does not apply to motions to vacate arbitration awards) ; O.R. Sec., Inc. v. Prof. Planning Assocs., Inc., 857 F.2d 742, 748 (11th Cir. 1988) (the rules of notice pleading of FED. R. CIV. P. 8 are inapplicable to proceedings to vacate an arbitration award because relief must be sought in the form of a motion), and SIP proceeded at its peril when it failed to raise its arguments on the merits in its responsive motion. Second, even if the FAA did not provide the relevant procedures, FED. R. CIV. P. 12(a)(4)(A) could not have been triggered because a pleading is a prerequisite for the application of Rule 12(a)(4)(A), and there was no pleading, only IFC's motion, followed by SIP's motion.

We also note that SIP had several opportunities to present its arguments on the merits to the District Court but failed to invoke any of the statutory grounds for setting aside an arbitration award. SIP first filed a motion for extension for time to respond. However, when that motion was granted, SIP dashed into state court with a motion to vacate or modify the arbitration award, rather than argue on the merits in federal court. SIP then submitted its Rule 12(b)(6) motion for abstention, rather than argue on the merits. SIP declined to submit a cross-motion to vacate and made no attempt to argue the merits in its motion to strike the judgment and its motion for

-15-

reconsideration, much less argue that it failed to raise arguments on the merits because it thought that it would have an opportunity to do so after its motion to dismiss. If SIP really expected that it would have an opportunity to respond on the merits, it is inexplicable why SIP failed to argue so after the District Court entered judgment. SIP proceeded at its own peril with its strategy of attempting to reverse-remove the case to state court rather than arguing the merits. SIP had ample opportunities to be heard and the District Court properly decided the merits of the confirmation action. Therefore, we will affirm the District Court's confirmation of the arbitration award.

**C. Did the District Court Have Ancillary Jurisdiction Over the Garnishment Action?**

IFC's appeal from the District Court's order dismissing the garnishment action against the Fund for lack of subject matter jurisdiction raises two theories of jurisdiction. First, IFC claims that the District Court had ancillary jurisdiction. Second, IFC claims that the District Court had supplemental jurisdiction under 28 U.S.C. § 1367(a). We undertake a plenary review of dismissals for lack of subject matter jurisdiction. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005).

IFC argues that the District Court had subject matter jurisdiction both as a matter of ancillary jurisdiction and as a matter of supplemental jurisdiction. Ancillary jurisdiction is a common law doctrine that has largely been codified as "supplemental jurisdiction" in 28 U.S.C. § 1367.[6] Peacock v.

---

[6] Section 1367 authorizes supplemental jurisdiction:

> over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall

Thomas, 516 U.S. 349, 354, n.5 (1996). We do not see the relevant inquiries for ancillary and supplemental jurisdiction as separate; if the District Court had ancillary jurisdiction, it also had supplemental jurisdiction under 28 U.S.C. § 1367.

The Supreme Court has explained that "a federal court may exercise ancillary jurisdiction '(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" Id. at 354 (quoting Kokkonen v. Guardian Life Ins. Co, 511 U.S. 375, 379-80 (1994). Previously, we have held that a federal district court "has ancillary jurisdiction to adjudicate a garnishment action by a judgment creditor against a nonparty to the original lawsuit which may owe the judgment debtor an obligation to indemnify against the judgment." Skevofilax v. Quigley, 810 F.2d 378, 385 (3d Cir. 1987) (*en banc*). Skevofilax involved a garnishment action brought by judgment creditors who had won a federal judgment for malicious prosecution against three police officers. The officers were indemnified by the township that employed them, and the judgment creditors sought to satisfy the judgment by garnishing the township under FED. R. CIV. P. 69. The township objected that the federal district court lacked subject matter jurisdiction over the garnishment action because the parties were not diverse and the garnishment proceeding was based solely on contract and raised no federal issues. Sitting *en banc*, we held that under Rule 69, "the same relief is available in federal court for the satisfaction of a federal court judgment as would be available in state court," as "Rule 69 does not contemplate that the holders of federal judgments must resort to

include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

-17-

state tribunals for their enforcement." Id. at 384. The applicable state procedure in Skevofilax permitted a garnishment action based on an indemnification agreement. For that reason, we ruled that the District Court had jurisdiction.

There is no contention that, if Skevofilax is still "good" law, it governs this case and the District Court had ancillary jurisdiction over the garnishment action. The District Court held that it did not have subject matter jurisdiction because it believed that the Supreme Court's decision in Peacock, 516 U.S. 349, abrogated Skevofilax. The question before us, then, is whether Peacock overruled Skevofilax. The question before us, then, is whether Peacock overruled Skevofilax. We hold that it did not, and we are obligated to follow our precedent in Skevofilax insofar as Peacock does not apply.

## 1. Did Peacock Abrogate Skevofilax?

In Peacock, the Supreme Court addressed the question "whether federal courts possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." 516 U.S. at 351. The plaintiff in Peacock had obtained a federal judgment against the defendant corporation for an ERISA violation. While the case was on appeal, the corporation's primary shareholder transferred most of the corporate assets to himself, which defeated the plaintiff's attempts to collect on the judgment from the corporation. The plaintiff then brought an action in federal court against the shareholder under a veil-piercing theory. Id. At 352. The plaintiff alleged subject matter jurisdiction, inter alia, as a matter of ancillary jurisdiction to the original ERISA suit. Id. at 354. The Supreme Court rejected the plaintiff's claim of ancillary jurisdiction because of the lack of a factual nexus with the

-18-

original ERISA suit and because it involved "entirely new theories of liability." Id. at 358.

The Fund argues that Peacock overruled Skevofilax and, as evidence of that, points to Peacock's reference to Skevofilax as being on the wrong side of a circuit split. Id. at 352 n.2. Peacock noted that the Supreme Court had granted certiorari in the case to resolve a circuit split on the exercise of ancillary jurisdiction, id. at 352, and illustrated this split in footnote two, in which Skevofilax was listed along with three other cases as being on the wrong side of the split:

> Compare 39 F.3d 493 (CA4 1994) (case below), Argento v. Melrose Park, 838 F.2d 1483 (CA7 1988), Skevofilax v. Quigley, 810 F.2d 378 (CA3) (en banc), cert. denied, 481 U.S. 1029, 107 S. Ct. 1956, 95 L. Ed. 2d 528 (1987), and Blackburn Truck Lines, Inc. v. Francis, 723 F.2d 730 (CA9 1984), with Sandlin v. Corporate Interiors Inc., 972 F.2d 1212 (CA10 1992), and Berry v. McLemore, 795 F.2d 452 (CA5 1986).

Id. at 352 n.2. The implication drawn by the Fund is that Peacock intended to abrogate Skevofilax. We are more sanguine about the continued viability of Skevofilax.

Footnote two is dictum. As the Supreme Court noted in the course of its discussion of ancillary jurisdiction in Kokkonen v. Guardian Life Insurance Co. of America, "[i]t is to the holdings of...cases, rather than their dicta, that we must attend." 511 U.S. 375, 379 (1994). Nonetheless, we pay due homage to the Supreme Court's well-considered dicta as pharoi that guide our rulings. Cf. Tate v. Showboat Marina Casino P'ship, No. 05-1681 (7th Cir., Dec. 13, 2005) (Posner, J.) (arguing that "the holding of a case includes, besides the facts and the outcome, the reasoning essential to that outcome"). Footnote two, however, is hardly a well-considered dictum; it merely

-19-

illustrates a circuit split about general questions of ancillary jurisdiction and is in no way dispositive of whether <u>Peacock</u> extends to garnishment actions.

Peacock itself made clear that it does not apply to Rule 69 actions. In the penultimate paragraph of the <u>Peacock</u>'s majority opinion, the Supreme Court noted that:

> When a party has obtained a valid federal judgment, only extraordinary circumstances, if any, can justify ancillary jurisdiction over a subsequent suit like this. To protect and aid the collection of a federal judgment, the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution.

<u>Id.</u> at 359. The Supreme Court then observed in a footnote that "Rule 69(a), for instance, permits judgment creditors to use *any* execution method consistent with the practice and procedure of the State in which the district court sits." <u>Id.</u> at 359 n.7 (emphasis added). Thus, the Supreme Court did not see a Rule 69 action as falling into the same category as the veil-piercing suit in <u>Peacock</u>. <u>Peacock</u> excepted Rule 69 actions from its reach.

Rule 69 provides that "The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the distrit court is held . . .." FED. R. CIV. P. 69. The Supreme Court referred to the full range of execution methods authorized under Rule 69, and for the Federal District Court for the Eastern District of Pennsylvania this includes garnishment. PA. R. CIV. P. 3101-3149. Thus, under <u>Peacock</u> itself, ancillary jurisdiction was proper over the Rule 69 garnishment action in this case.

Moreover, the Fund's reading of footnote two is contrary

-20-

to the substance of the <u>Peacock</u> opinion. Factually, <u>Peacock</u> is a bird of a different feather than <u>Skevofilax</u>, and we do not believe that the Supreme Court intended <u>Peacock</u> to extend to the <u>Skevofilax</u> situation because garnishment is different from other types of liability. The key difference between <u>Peacock</u> and <u>Skevofilax</u> is that <u>Peacock</u> addressed whether ancillary jurisdiction was available to find primary liability, whereas <u>Skevofilax</u> dealt with ancillary jurisdiction to seek satisfaction of a judgment from a party that is alleged to be secondarily liable based on an indemnification agreement. <u>Peacock</u> emphasized the need for independent subject matter jurisdiction over *new* actions, <u>id.</u> at 359, which distinguishes it from a garnishment action. The Supreme Court itself recognized this distinction in <u>Mackey v. Lanier Collection Agency & Service</u>, where it noted that garnishment is usually understood as a procedural mechanism for the enforcement of judgments, rather than a "substantive law...[that] creates rights and liabilities where none existed before." 486 U.S. 825, 834 n.10 (1988).

Peacock was not a collection or enforcement action. The plaintiff did not seek a Rule 69 garnishment and there was no indemnity obligation available for garnishment. The plaintiff in <u>Peacock</u> did not seek to stand in the judgment debtor's shoes or to enforce an indemnification agreement. Instead, <u>Peacock</u> was an entirely new and unrelated action. There was no nexus of factual allegations between the veil-piercing claim in <u>Peacock</u> and the underlying ERISA claim, <u>id.</u> at 356; the plaintiff in <u>Peacock</u> was attempting to jurisdictionally bootstrap a new veil-piercing action onto his earlier ERISA suit. Veil-piercing does not make a party secondarily liable. Rather, it collapses corporate distinctions to make for joint primary liability. This contrasts with garnishment, in which there is a new party and a new theory of liability, but not a new direct claim. Moreover, garnishment actions are distinguishable from veil-piercing because they require a pre-existing contractual or statutory basis

-21-

for garnishment, whereas veil-piercing is an equitable procedure, In re: Owens Corning, 419 F.3d 195, 205 (3d Cir. 2005), that involves the creation of liability in spite of the contractual and statutory separateness of corporate entities.

The Supreme Court in Peacock observed that a court's ancillary jurisdiction is greater in judgment-enforcement actions than in independent suits based on a judgment, and was careful to note that it had "reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." 516 U.S. at 356. The Supreme Court explicitly refrained from addressing collection actions in Peacock, see id. at 357, n.6, and noted that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person *not already liable* for that judgment." Id. at 357 (emphasis added). Thus, Peacock only addressed jurisdiction over actions that seek to impose liability "on a *person not otherwise liable* for the judgment." Id. at 351 (emphasis added). Indeed, Peacock itself largely recognized that jurisdiction is proper for Rule 69 actions to enforce a judgment like the instant one. See id. at 359, n.7. In light of the crucial factual distinction regarding primary and secondary liability, we believe that Peacock does nothing to disturb our holding in Skevofilax.

Indeed, were it otherwise, there could *never* be jurisdiction over any garnishment action, as it would always be based on a new, contractual theory of liability. Thus, "in almost all cases federal courts would be unable to enforce their judgments by resort to garnishment process." Skevofilax, 810 F.2d at 384. As we noted in Skevofilax:

> The untoward consequences of insistence upon a federal district court possessing an independent basis of subject matter jurisdiction over a garnishee would not be

-22-

confined to the efforts at post-judgment enforcement. Under Rule 64 of the Federal Rules of Civil Procedure, prejudgment in rem and quasi in rem remedies are available "under the circumstances and in the manner provided by the law of the state in which the district court is held[.]"

Id. at 384 (citing FED. R. CIV. P. 64) (alternations original).

"Ancillary enforcement jurisdiction is, at its core, a creature of necessity." Peacock, 516 U.S. at 359. If federal courts were deprived of ancillary jurisdiction to enforce their judgments, it would make federal courts dependent on state courts to enforce federal judgments, thereby jeopardizing the effectiveness of federal decrees. Skevofilax, 810 F.2d at 385. Moreover, "[i]t would impose on the state courts the role of serving as an auxiliary or adjunct to the district court by cleaning up the loose ends of a district court lawsuit," thereby impairing the interests of the state. Id. "Prudential factors, such as "convenience, judicial economy . . . fairness to litigants and . . . interests of federalism" counsel strongly against the Fund's reading of Skevofilax. Id. at 389 (Becker, J., concurring) (quoting Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 990 & n.53 (3d Cir. 1984). We are not inclined to render federal courts toothless. Doing so would be contrary to all prudential factors.

Our reading of Peacock comports with the jurisprudence of the Seventh Circuit, which has considered the issue on no less than three occasions. Footnote two of Peacock directs the reader to compare six circuit court decisions. 516 U.S. at 352 n.2. Three of the six cases, including Peacock itself, dealt with whether there was ancillary jurisdiction over veil piercing actions subsequent to an initial finding of corporate liability. See Thomas v. Peacock, 39 F.3d 493 (4th Cir. 1994); Sandlin v. Corp. Interiors, Inc., 972 F.2d 1212 (10th Cir. 1992); Blackburn

Truck Lines, Inc. v. Francis, 723 F.2d 730 (9th Cir. 1984). Of the remaining three cases, one is Skevofilax and one is Argento v. Melrose Park, 838 F.2d 1483 (7th Cir. 1988).[7] Argento involved a garnishment action on an indemnification contract to collect the damages awarded in a civil rights action under 42 U.S.C. §§ 1983 and 1985. The legal issue in Argento was indistinguishable from Skevofilax. Since the Supreme Court's decision in Peacock, the Seventh Circuit has stated in no less than three cases that Peacock did not overrule Argento. See Yang v. City of Chi., 137 F.3d 522 (7th Cir. 1998) (district court had jurisdiction over garnishment proceeding based on indemnification clause); Wilson v. City of Chi., 120 F.3d 681 (7th Cir. 1997) (holding Peacock does not apply where "the plaintiff is proceeding in his original action [under Rule 69]

---

[7] The final case is Berry v. McLemore, 795 F.2d 452 (5th Cir. 1986), which involved two separate garnishment actions against different defendants, who were both alleged to be liable to the judgment debtor. The Fifth Circuit concluded that there was no ancillary jurisdiction because Fifth Circuit precedent has always treated garnishments as independent actions, unconnected to the underlying suit establishing liability. Id. at 455. Nonetheless, the Fifth Circuit held that there was federal jurisdiction over one of the garnishment actions based on diversity jurisdiction.

We find the results of the Fifth Circuit's decision troubling, as it would largely restrict the ability of federal courts to enforce their judgments to the diversity of citizenship of garnishee and garnishor (although we can conceive of the rare situation in which garnishment could lead to federal question jurisdiction). The possibility that some garnishees will be haled before a federal court while other garnishees on the same judgment will end up before a state court strikes is a poor use of judicial resources and creates too many opportunities for jurisdictional mischief.

-24-

rather than by means of a new suit."); <u>Matos v. Nellis, Inc.</u>, 101 F.3d 1193 (7th Cir. 1996). <u>Accord</u> <u>Condaire, Inc. v. Allied Piping, Inc.</u>, 286 F.3d 353 (6th Cir. 2002) (holding that federal court may exercise jurisdiction over a garnishment action that raises different issues than were litigated in the original suit). <u>Cf.</u> <u>U.S.I. Prop. Corp. v. M.D. Constr. Co.</u>, 230 F.3d 489, 497 n.6 (1st Cir. 2000) (noting <u>Skevofilax</u> and stating "[w]e do not decide whether such indemnification proceedings fall within enforcement jurisdiction."); <u>Dulce v. Dulce</u>, 233 F.3d 143 (2d Cir. 2000) (district court had jurisdiction to order judgment debtor's executor to probate judgment debtor's will); <u>Thomas, Head & Greisen Employees Trust v. Buster</u>, 95 F.3d 1449 (9th Cir. 1996) (district court had jurisdiction to void fraudulent transfer). We concur with the Seventh Circuit that <u>Peacock</u> applies to the non-collection scenarios, like veil-piercing, but not to the garnishment scenarios of <u>Argento</u> and <u>Skevofilax</u>.

The Fund also claims that <u>Peacock</u> governs this case because a new basis for liability is alleged. We disagree. Although garnishment actions are new actions in the sense that there is a new party and a new theory for that party's liability, they are not new actions in the sense of a new direct claim. In the instant case, the District Court characterized the appeal as having a different theory of liability based on breach of contract. More aptly phrased, the garnishment is based not on a breach of contract theory, but on the *existence* of a contract. Although garnishment involves a new theory of liability, there is an essential difference between an action to enforce a judgment via garnishment and an action to establish liability in the first place. A typical action requires that the plaintiff establish that the defendant is liable to him. A garnishment action, in contrast, is predicated on a pre-existing judgment finding that the judgment debtor is liable to the garnishor and then requires a showing that the garnishee is liable to the judgment debtor, not to the garnishor.

-25-

The Fund objects that <u>Peacock</u> should govern because the garnishment was a separate action rather than part of the original suit. While the Fund is correct that the Seventh Circuit appeared to find this distinction important in <u>Wilson</u>, 120 F.3d at 684, we find that the better reading of <u>Wilson</u> is the one the Seventh Circuit has adopted in later cases, namely that Rule 69 actions are to be treated as part of the original suit. Thus, in <u>Yang</u>, the Seventh Circuit noted that:

> there is no question here that [plaintiff]'s Rule 69 petition is not a new suit. As in <u>Wilson</u> and <u>Argento</u>, the only new issue raised in [plaintiff]'s second suit is whether [defendant was acting within the scope of his employment so as to trigger the indemnification clause].

137 F.3d at 526. Thus, the Seventh Circuit line of cases does not support the treatment of garnishment actions differently, based on whether they are brought separately or as a part of the original suit that established primary liability.

To the extent that the Fund urges us to find the fact that a Rule 69 action was filed separately from the original suit as divesting jurisdiction, we reject the proposition as unduly formalistic. A Rule 69 action can be filed as part of the original suit or as a separate suit. A Rule 69 action, by its very nature, piggybacks on an action establishing liability and has a derivative status. Moreover, the Rule 69 action can be initiated under the original suit years after the original complaint was filed. We fail to see a meaningful distinction between Rule 69 actions brought under an original suit and those brought separately, and we are loathe to burden judgment creditors with an atavism that smacks of the archaic distinctions of pleadings at common law.

The Fund's final argument is that ancillary jurisdiction over a garnishment action is not appropriate where the garnishee

disputes its liability. We do not believe that disputed liability is sufficient to divest federal jurisdiction from an action when it would otherwise be appropriate, even if the dispute involved questions of fact. Under Skevofilax, the dispute over the scope of the indemnification agreement is irrelevant to jurisdiction; contesting garnishment cannot itself defeat federal enforcement jurisdiction. See 810 F.2d at 385. Cf. Matos, 101 F.3d at 1196. ("Whether a debt existed, and if so whether [the garnishee] repaid, are in the end factual questions that the district court must resolve.")

The Fund argues that Peacock's observation that the Supreme Court had previously "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including . . . garnishment" cannot be read as an indication that there is ancillary jurisdiction over all garnishment actions. Instead, the Fund asserts that ancillary jurisdiction over garnishment actions is only appropriate when there are no contested issues of fact regarding the garnishment. Thus, in the Fund's reading, there might be ancillary jurisdiction over a run of the mill garnishment of a bank account to pay a child support order but not for a contested indemnification like in the present case.

As support for this reading, the Fund points to Hudson v. Coleman, 347 F.3d 138, 146 (6th Cir. 2003), in which the Sixth Circuit held that there was no ancillary federal jurisdiction over a garnishment action based on an indemnification agreement because "legitimate, unresolved disputes concerning whether conduct occurs without scope of [the agreement] deprives a federal court of ancillary jurisdiction in a garnishment action pursuant to Peacock." In Hudson, the Sixth Circuit opined:

The Supreme Court's acknowledgment of the fact that

-27-

garnishment sometimes falls within ancillary jurisdiction is obviously not imprimatur for all garnishment actions arising from previous factually similar underlying federal claims to proceed in federal court. The type of garnishment proceeding referred to in Peacock does not contemplate making the garnishee personally liable on the judgment based on some independent legal theory as Hudson seeks to do in this case. Instead, the typical garnishment proceeding referenced in Peacock contemplates the garnishee's paying the judgment creditor/garnishing party directly for funds, such as a salary, owed by the garnishee to the defendant in the underlying action.

Id. at 144.

We are unpersuaded by our brethren's analysis.[8] The

---

[8] We would think that any consideration of the scope of the Supreme Court's blessing of ancillary enforcement jurisdiction over garnishment in Peacock would begin with an analysis of the case cited by the Supreme Court as an example of when ancillary jurisdiction was proper over a garnishment action, Mackey, 486 U.S. 825. The Sixth Circuit did not even mention Mackey in Hudson, perhaps because the issue was "obvious." Unfortunately, Mackey does not support the proposition for which the Supreme Court cited it in Peacock. The Supreme Court cited it as an example of its past approval of "the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including...garnishment." 516 U.S. at 356.

Ancillary federal enforcement jurisdiction was never involved in Mackey, however. Mackey came up on a grant of *certiorari* to the Georgia Supreme Court; federal courts were never involved until the Supreme Court heard the case and the

-28-

Sixth Circuit's jurisprudence on ancillary jurisdiction appears unsettled, Condaire, Inc. v. Allied Piping, Inc., 286 F.3d 353 (6th Cir. 2002) (holding that federal court may exercise jurisdiction over a garnishment action that raises different issues than were litigated in the original suit), and the example given by the Sixth Circuit is a distinction without a difference. The difference between "to owe" and "to be liable" is purely semantic. Garnishment always involves a separate theory of liability from the original action. The garnishment of a salary still involves a theory of contract liability based on an employment contract and is thus indistinguishable from garnishment based on an indemnification contract (which could itself be part of an employment contract). In any event, our disagreement with Hudson is immaterial because, as discussed below regarding the District Court's denial of IFC's summary judgment motion, the remaining questions concerning the Fund's liability are questions of law. The fact that the Fund's liability is disputed does not defeat federal jurisdiction.

Although we believe it clear that ancillary enforcement jurisdiction is proper in this case under its actual facts, we note

_____

issue it granted *certiorari* on was whether ERISA, a federal statute, preempted Georgia's garnishment statute. Had the Sixth Circuit referred to Mackey, however, they would have noted a well-considered dictum (easily counter-balancing the rather cursory dictum in footnote two of Peacock) that garnishment is usually understood as a procedural mechanism for the enforcement of judgments, rather than a "substantive law...[that] creates rights and liabilities where none existed before." 486 U.S. 834, n.10. To this extent, the fact that garnishment always involves a new theory of liability is irrelevant to the question of ancillary jurisdiction. The liability in garnishment is always a derivative, secondary liability to the garnishor, never direct, primary liability. This distinction removes garnishment actions from the analysis set forth in Peacock.

-29-

that there would undoubtedly have been subject matter jurisdiction over the garnishment in this case had SIP made a cross-claim against the Fund under FED. R. CIV. P. 13(g). "[M]any of the same factors that would justify jurisdiction of the indemnification claim if it had been . . . asserted as a cross-claim under Rule 13(g) continue to justify jurisdiction over the Rule 69 claim." Skevofilax, 810 F.2d at 389 (Becker, J., concurring). In neither the instant case nor Skevofilax was a timely cross-claim filed under Rule 13(g). A plurality section of Skevofilax treated the judgment debtors' support of the judgment creditors' garnishment motion as a cross-claim, but we do not think it takes away from the essential point. Namely, if there would have been jurisdiction over a cross-claim, there must also be jurisdiction over a derivative claim made by a party standing in the shoes of the party that could have made the cross-claim.

There are numerous strategic reasons why a cross-claim might not be asserted in any particular action,[9] but we do not believe that federal jurisdiction can ever depend on a particular defendant's strategic maneuvers. Either there is a sufficient "common nucleus of operative fact" for jurisdiction to hear related claims or there is not. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). If a sufficient "common nucleus of operative facts" for jurisdiction could exist over a cross-claim, so too could it exist over a garnishment action. There was a "common nucleus of operative facts" between the arbitration confirmation and the garnishment in this case because the original arbitration matter which the District Court confirmed dealt with IFC's contract with SIP to recruit investors *for the*

---

[9] SIP and the Fund are juridically separate entities and are represented by separate counsel, but there is an inference of complicity between the Fund and SIP, which is the general partner in SIF Management, L.P., which is the general partner of the Fund, in order to escape the judgment, for the Fund is set to liquidate on March 31, 2006.

*Fund*, which SIP managed via SIF Management, L.P. When SIP refused to pay the placement fees to IFC, it did so on the grounds that it was protecting the Fund from the alleged fraud.

SIP's calculated decision not to implead the Fund should not be adequate to defeat IFC's garnishment action. The possibility of ancillary jurisdiction via a cross-claim indicates that there should also be ancillary jurisdiction for a garnishment action that lets the garnishor stand in the shoes of the potential cross-claimant.

To summarize, we do not believe that Peacock extends to cases involving garnishment actions based on indemnification agreements. Therefore, we hold that Skevofilax is still "good law" and are bound by this precedent to find that there is ancillary jurisdiction to impose an obligation to pay an existing judgment on a party that is alleged in good faith to be secondarily liable for that judgment. We conclude that our holding here does not ruffle Peacock's feathers.

### D. Did the District Court Err in Refusing to Grant Summary Judgment for the Garnishment?

In the same order, the District Court both denied IFC's motion for summary judgment on the garnishment and dismissed the garnishment action for lack of subject matter jurisdiction. If the District Court lacked subject matter jurisdiction, it should not have ruled on summary judgment, as there would not be a proper "case or controversy" that it could adjudicate.

While we remain chary of hypothetical jurisdiction, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-102 (1998), in light of our ruling that the District Court erred in finding that it did not have subject matter jurisdiction, we are willing to look upon the District Court's ruling as being a ruling

in the alternative. We recognize that the District Court was faced with a difficult question regarding the relationship of <u>Peacock</u> and <u>Skevilofax</u>, and that, viewed in light of our ruling, the District Court's combined ruling served the interests of judicial economy. Therefore, we will deem the District Court's consideration of summary judgment to have been proper in spite of its finding that it did not have subject matter jurisdiction over the case.

We undertake a plenary review of grants of summary judgment. <u>Gottshall v. Consol. Rail Corp.</u>, 56 F.3d 530, 533 (3d Cir. 1995). Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In reviewing the District Court's grant of summary judgment, we view the facts in a light most favorable to the non-moving party. <u>Gottshall</u>, 56 F.3d at 533.

The genuine issue of material fact found by the District Court was the scope of the indemnification agreement, namely whether it was loss or liability indemnification and whether it covered the placement fee agreement. Indemnity agreements are interpreted in accordance with general principles of contract law and, under Delaware law, "the interpretation and construction of insurance contracts presents a clear question of law subject to de novo review." <u>E. I. du Pont de Nemours & Co. v. Allstate Ins. Co.</u>, 686 A.2d 152, 156 (Del. 1996); <u>Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.</u>, 616 A.2d 1192, 1195 (Del. 1992) ("The proper construction of any contract, including an insurance contract, is purely a question of law."). Therefore, the District Court erred in denying IFC's summary judgment motion on the grounds that genuine issues of material *fact* remained. Accordingly, we will reverse the District Court's denial of IFC's motion for summary judgment.

-32-

Typically, we would now remand this case to the District Court to allow it the first crack at determining questions of law related to summary judgment, which could then be appealed to us. This is not a typical case, however, for two reasons. First, the Fund is set to liquidate on March 31, 2006. If we were to remand and the District Court granted summary judgment, IFC's ability to collect on its judgment from the Fund would be severely prejudiced. IFC has been diligent in protecting its rights and had the District Court properly found jurisdiction over the garnishment action, the March 31, 2006, deadline might not loom so large.

Second, although there is a corporate separateness between SIP and the Fund, we note that SIP exercises significant control over the Fund in its capacity as general partner of SIP Management, L.P., which is the general partner of the Fund. The main legal defense posed by the Fund is that it is not yet liable. Were SIP to pay, the Fund could not claim that its indemnification obligation has not yet vested. In the context of the pending liquidation of the Fund, the party capable of satisfying the judgment, there is a strong overtone of strategic behavior by related parties. We are loathe to let a federal judgment be evaded by strategic behavior. See City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 (2001) ("a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.") Therefore, rather than remand, we are exercising the full measure of our jurisdiction under 28 U.S.C. § 1291 and undertaking our own plenary review of the questions of law.

There are still four questions of law that must be resolved. First, whether the indemnification agreement was for loss or liability indemnification; second, whether the indemnification agreement applied to the placement fee arrangement; third, whether SIP was acting within the ambit of the "on behalf of" clause regarding the placement fees; and

fourth, whether there is merit to the Fund's claim of set-off.

## 1. Was the Indemnification for Loss or Liability?

The agreement between SIP and the Fund is governed by Delaware law. It is readily apparent that it is an agreement for liability, not just loss indemnification. The indemnification agreement states that:

> The Fund shall indemnify and *hold harmless* each Indemnified Person [including SIP] from any and all reasonable costs and expenses and *all damages and claims* which may be *incurred or asserted* against him or it by reason of any action taken or omitted to be taken on behalf of the [Fund] or in furtherance of its interest, or by reason of such Indemnified Person's connection to or relationship with the [Fund], unless such cost, expense, damage or claim results from the failure of such Indemnified Person to [act in good faith in the best interests of the Fund and not commit gross negligence or wilful misconduct].

(emphasis added). The agreement provides indemnification not merely for "damages incurred," but also for "claims asserted." Under Delaware law, this assuredly includes judgments awarded. Seitz v. A-Del. Constr. Co., 1987 Del. Super. LEXIS 1279, *7 (Del. Super. Ct., Aug. 13, 1987) ("When the contract of indemnity binds the indemnitor to save harmless the indemnitee, it is a contract indemnity against liability."); Tidewater Coal Exch., Inc. v. Am. Surety Co., 143 A. 34 (Del. Super. Ct. 1928); see also, Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 202 n.6 (3d Cir. 1995) ("hold harmless" defined as an agreement in which one party relieves another of "liability"); Sorenson v. Overland Corp., 142 F. Supp. 354 (D. Del. 1956).

-34-

## 2. Did the Indemnification Agreement Exclude Placement Fees?

Under Delaware law,

> if a writing is plain and clear on its face, i.e., its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent. However, if the words of the agreement can only be known through an appreciation of the context and circumstances in which they were used a court is not free to disregard extrinsic evidence of what the parties intended. In that situation the language used by the parties is subject to different meanings and is, thus, ambiguous, or more precisely, not reflective of the parties shared intent. But the language of an agreement, like that of a statute, is not rendered ambiguous simply because the parties in litigation differ concerning its meaning.

City Investing Co. Liquidating Trust v. Cont'l Cas. Co., 624 A.2d 1191, 1198 (Del. 1993) (internal citations and quotations omitted).

In this case the agreement is plain on its face. There is no ambiguity regarding the words "*any* action take or omitted to be taken on behalf of the [Fund]". This is broad, unambiguous language that evinces no intention to carve out a particular transaction. Therefore, we do not consider the affidavit of an SIP member, submitted by SIP in opposition to the garnishment, which purports that the indemnity provision was not intended to apply to placement fee obligations. As the indemnification agreement is clear on its face, we hold that it does cover the placement fee arrangement, if it was undertaken on behalf of the Fund.

### 3. Was SIP Acting on Behalf of the Fund When It Refused to Pay IFC?

The Fund argues that although the placement fee arrangement was made on its behalf, the failure to pay IFC for its services was not done on its behalf. We believe that this draws too fine of a line and that, as a matter of law, SIP was acting on the Fund's behalf in contracting with IFC and in its actions that constituted a breach of that contract. It is unquestioned that SIP had the authority to enter into the placement fee arrangement and to monitor the contract. SIP's refusal to pay IFC was because SIP claimed that IFC was defrauding it. SIP has vigorously maintained this position throughout this litigation. When SIP refused to pay, it was acting in accordance with its management duties to protect the Fund from fraud and believed in good faith, as far as we can tell, that withholding payment was excused by IFC's prior breach. Only now, when it appears that the Fund might be on the hook, does the Fund disown SIP's actions. We are unimpressed. The failure to pay IFC its placement fees was done on behalf of the Fund and is covered by the indemnification agreement.

### 4. May the Fund Raise SIP's Set-Off Claim as a Defense to the Garnishment?

Finally, the Fund argues that IFC breached its agency agreement with SIP by diverting the Fund's assets and that the Fund's ability to raise SIP's claim of a set-off precludes summary judgment on the garnishment action. We disagree. First, this was SIP's defense in arbitration, which was rejected by the arbitrators. This is not a direct appeal of the arbitrators' ruling, so if the Fund were in privity with SIP, the arbitrators' ruling, confirmed by the District Court in its Order of September 7, 2004, would preclude litigation of this issue under *res judicata*. Transamerica Occidenal Life Ins. Co. v. Aviation Office of America, Inc., 292 F.3d 384, 393 (3d Cir. 2002).

-36-

Second, the Fund, as garnishee, may not raise the judgment debtor's defenses as against the judgment creditor. Fed. R. Civ. P. 69 states that "[t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held . . .." Although the interpretation of the indemnification Agreement is governed by Delaware law, the case was before the United States District Court for the Eastern District of Pennsylvania. We look therefore to Pennsylvania law regarding enforcement of the judgment. Under Pennsylvania law, a garnishee "may not assert any defense on behalf of the defendant against the plaintiff or otherwise attack the validity of the attachment." PA. R. CIV. P. 3145(d)(2). Therefore, the Fund may not raise SIP's set-off claim as a defense.

Because no genuine issues of material fact remain and all issues of law have been decided in favor of IFC, we hereby order summary judgment in favor of IFC in its garnishment action.

**Conclusion**

For the reasons given above, we will affirm the District Court's confirmation of the arbitration award in favor of IFC as against SIP, reverse the District Court's denial of summary judgment on IFC's Rule 69 garnishment action, and direct that summary judgment be entered in favor of IFC as against the Fund on the garnishment action.