E.I. DU PONT DE NEMOURS & COMPANY, a corporation of the State of Delaware, Plaintiff Below, Appellant,

v.

ALLSTATE INSURANCE COMPANY, as successor to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company; Commercial Union Insurance Co. as successor to Employers' Surplus Lines Insurance Co.; The Employers' Liability Assurance Corporation, Ltd., d/b/a Commercial Union Insurance Co., European General Reinsurance Co., Gerling Konzern Allegemaine Versicherungs–Acktiengesellschaft; The Home Ins. Co.; Swiss Reinsurance, Ltd., and The Travelers Indemnity Co., Defendants Below, Appellees.

No. 134, 1996.

Supreme Court of Delaware.

Submitted: Sept. 4, 1996.
Decided: Oct. 16, 1996.

Charles S. Crompton, Jr. and Richard L. Horwitz, Potter, Anderson & Corroon, Wilmington, Richard Allen Paul and Erin Kelly, E.I. du Pont de Nemours and Company, Wilmington (Peter J. Kalis (argued), Michael J. Lynch and Thomas M. Reiter, Kirkpatrick & Lockhart, Pittsburgh, PA, of counsel), for Appellant.

Judith Nichols Renzulli, Duane, Morris & Heckscher, Wilmington (Robert F. Cusumano (argued), Lynn K. Neuner and Elizabeth D. Smith, Simpson, Thacher & Bartlett, New York City, and Wiley, Rein & Fielding, Washington, DC, of counsel), for Appellee The Travelers Indemnity Company.

Laurence V. Cronin and Brett D. Fallon, Smith, Katzenstein & Furlow, Wilmington, for Appellee Allstate Insurance Company as successor to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company.

Henry E. Gallagher, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, for Appellees Commercial Union Insurance Company, as Successor to Employers' Surplus Lines Insurance Company and The Employers' Liability Assurance Corporation, Ltd.

Richard K. Herrmann and Mary B. Matterer, Stadley, Ronon, Stevens & Young, L.L.P., Wilmington (Arthur J. Liederman and Anthony J. LaPorta, Standard Weisberg, P.C., New York City, of counsel), for Appellees European General Reinsurance Company, Gerling–Konzern Allegemaine Versicherungs Acktiengesellschaft and Swiss Reinsurance Company.

Carmella P. Keener, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington (Stephen Fennell and Steven J. Barber, Steptoe & Johnson, Washington, DC, of counsel), for Appellee The Home Insurance Company.

C. Scott Reese, Cooch and Taylor, Wilmington, for Amicus Curiae Insurance Environmental Litigation Association.

Before VEASEY, C.J., WALSH and BERGER, JJ.

WALSH, Justice:

This is an interlocutory appeal from a Superior Court decision which granted partial summary judgment against the appellant plaintiff-below, E.I. du Pont de Nemours and Company ("DuPont") and at the same time denied DuPont's motion for partial summary judgment. We granted interlocutory review to resolve important questions of first impression involving coverage under comprehensive general liability policies for claims arising from toxic waste site remediation.

In granting partial summary judgment against DuPont and in favor of the

appellee insurers (the "Insurers")[1] the Superior Court ruled that the cost of remedying damage occurring on sites owned by DuPont was not recoverable under the Owned Property Exception in the Insurers' policies. We conclude that the cost of toxic waste remediation is not covered at DuPont sites and, with respect to third party sites, is available only if the cleanup was pursuant to court or governmental order extended to actual damage at the third party sites.

I

The liability policies in dispute were issued by the Insurers to DuPont during the years 1967 to 1986. The language of the policies, for present purposes, is uniform and provides liability coverage for "all sums which the insured shall become legally obligated to pay as damages ... because of [or "on account of"] property damage" (the "Property Damage Definition"). Most policies also contain a specific exception commonly referred to as the "Owned Property Exception" which limits property damage coverage to "injury to or destruction of tangible property (other than property owned by the named Insured)."

In September 1988, the New Jersey Department of Environmental Protection and DuPont entered into administrative consent orders which required DuPont to engage in investigative and remedial measures to treat waste disposal areas, on and off-site groundwater contamination, as well as contamination of certain adjacent residential properties. Similarly, in September 1989 and March 1991, the New York Department of Environmental Conservation and DuPont entered into administrative consent orders which required DuPont to cleanup surface soils and on-site groundwater. DuPont sought coverage from the Insurers for expenses incurred in connection with the cleanup of fourteen of its manufacturing facilities in New York and New Jersey. When coverage was refused, DuPont commenced this action in the Superior Court, seeking a declaration of coverage.

Due to the magnitude of this litigation and for reasons of judicial economy, the Superior Court decided to try the matter in several stages with each stage focusing on two to three contamination sites. In the first phase of the case, the Superior Court designated three illustrative sites for trial. They were DuPont's New York Plant; Necco Park Landfill (near the Niagara Plant); and its Pompton Lakes, New Jersey Plant (the "Trial Sites"). At the Niagara Plant, DuPont seeks coverage for approximately $425,000 spent to excavate and dispose of soil and sediment on the surface of its property; $1.2 million spent installing an asphalt cap and clay perimeter barrier; and $85,000 spent for building a "slurry wall." At the Necco Park Landfill, DuPont seeks approximately $1.02 million spent to cover the surface of the property with a two-foot deep clay cap and approximately $3.5 million spent installing a "grout barrier." At the Pompton Lakes Plant, DuPont seeks coverage for approximately $30 million spent to remediate the surface and subsurface areas of its property.

After extensive discovery directed to the location and scope of remedial measures undertaken by DuPont, the parties, through motions for partial summary judgment, sought legal rulings concerning the interpretation of the language contained in the liability policies. DuPont argued that the Owned Property Exclusion was not applicable with respect to its remediation efforts both on-site and off-site. In contrast, the Insurers requested summary judgment in their favor, thereby relieving them of financial responsibility for all remediation efforts undertaken at governmental and judicial direction regardless of location.

The Superior Court first addressed the Owned Property Exclusion and held that policies containing such an exclusion precluded coverage for expenditures made by DuPont because of damage to property owned by

---

1. The Insurers involved in this appeal are Allstate Insurance Company (as Successor to Northbrook Excess and Surplus Insurance Company f/k/a Northbrook Insurance Company); Commercial Union Insurance Company (as successor to Employers' Surplus Lines Insurance Company) and The Employers' Liability Assurance Corporation, Ltd. (d/b/a Commercial Union Insurance Company); European General Reinsurance Company; Gerling Konzern A.G.; The Home Insurance Company; Swiss Reinsurance Company; and The Travelers Indemnity Company.

DuPont. As a result, no remediation expenses on DuPont property would be covered with the possible exception of groundwater, which the trial court ruled is owned by the states where the property is located.[2]

The Superior Court then turned to the definition of damages in response to the Insurers' motion for partial summary judgment. This holding presumably applies to all policies, irrespective of whether they contain "Owned Property Exception" clauses. The Court concluded that while there is the possibility of coverage for certain remedial activity, the facts of record indicate that no remedial measures undertaken on DuPont property had been undertaken in order to directly repair damage to third party property. Thus while, arguably, coverage could have been available for DuPont property if the cleanup order had stemmed from damage to third party property, the governmental and judicial orders specifically targeted remediation of DuPont property. With respect to preventive measures at third party sites, the court held that coverage existed for remediation only if (1) the cleanup was pursuant to court or governmental order, and (2) actual damage existed at the third party site.

## II

DuPont asserts two reasons for why the Owned Property Exception should have no application to the availability of liability coverage for DuPont's remediation efforts. First, the remedial measures undertaken on DuPont's property serve to reduce damage to third party property, i.e., while the remedial measures are on site, the damages are off site. Secondly, it is contended that the cleanup is required to protect against damage to the public in general, analogous to a public nuisance. In essence, DuPont argues that the focus of coverage should be not on "what" DuPont is cleaning up but "why." If, the argument runs, DuPont is expending

funds for environmental cleanup in response to cleanup orders stemming not because of damage to DuPont property[3] but because of damage to third party property, then remediation expense in response to such orders should fall within public liability coverage under all policies.

The Insurers contend that the Superior Court's analysis of policy coverage was clearly correct not only in terms of interpretation, but also in light of the undisputed record evidence that no money was ever paid by DuPont to a third party for purposes of repairing property damage or providing compensation. All measures undertaken to ensure that wells and groundwater were not polluted or damaged were confined to remediation efforts on DuPont's own property. Relying upon the court's decision in *Rhone–Poulenc v. American Motorists Ins.*, Del. Supr., 616 A.2d 1192 (1992), the Insurers argue that DuPont's efforts at preventive measures fall within the general rule which excludes the cost of such measures from the coverage definition of "property damage."

## III

### A.

▇ Our standard of review is well-settled: the interpretation and construction of insurance contracts presents a clear question of law subject to *de novo* review. *Playtex FP, Inc. v. Columbia Cas. Co.*, Del.Super., 622 A.2d 1074, 1076 (1992). That standard is also appropriate where, as here, the trial court has granted summary judgment on a record which the parties concede contains no material factual disputes touching the pertinent legal issues. *Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96 (1992).

▇ In attempting to resolve a language interpretation dispute between parties to a contract of insurance a court will, of course,

2. The Superior Court applied Delaware law in interpreting the contracts but applied the law of the states where the sites were located, New York and New Jersey, to determine the ownership of the groundwater at the sites. Although the Insurers dispute the Superior Court's analysis of groundwater ownership in the states in question,

they have not cross-appealed from that determination.

3. The parties to this appeal agree that any remedial efforts conducted solely to improve the condition of DuPont property would be excluded under the "Owned Property" exclusion.

seek to determine contractual intent from the language of the insurance contract itself. *Aetna Cas. and Sur. Co. v. Kenner*, Del. Supr., 570 A.2d 1172 (1990). Where the parties differ concerning the meaning of an insurance contract, the court will be guided by "a reasonable reading of the plain language of the policy." *Id.* at 1174. Moreover, ambiguity in policy language will not be found to "exist merely because two conflicting interpretations may be suggested." *Id.*

■ Travelers contends that even the remedial items of damages claimed do not constitute "damages" within the meaning of the policy because no money was ever paid to a third party to repair property damage. Instead, measures were taken to ensure that the wells and groundwater were not polluted or damaged further. Travelers' argument is persuasive because once an insured knows it is damaging a third party, it has a duty to mitigate those damages under *Rhone–Poulenc*.

■ In *Rhone–Poulenc* this Court looked to cases where there was no mitigation clause in the insurance contracts and noted that even those courts excluded coverage for preventive measures.

> In construing mitigation provisions, this Court cannot disregard other cases that have excluded coverage for preventive measures even in the absence of a mitigation provision in the insurance contract. These courts reasoned that the cost of preventive measures are [sic] not "because of property damage" as is required under standard CGL policies. Rather, as the trial court found, they are costs incurred to prevent the further release of contaminants. Public policy clearly favors imposing upon insureds a duty to mitigate damages. In the absence of such a rule, insureds could sit back and allow environmental damage to accumulate until they are compelled to mitigate damages through litigation.

616 A.2d at 1197 (citations omitted). The duty to mitigate gives meaning to the distinction between sums expended for prevention and those expended "because of property damage." *See Id.* Thus, the duty to mitigate exists in this case also. *Monsanto Co.*

*v. Aetna Cas. and Surety Co.*, Del.Super., C.A. No. 88C–JA–118, 1993 WL 563248, Ridgely, P.J. (Dec. 9, 1993) (duty to mitigate exists under Delaware law "even in the absence of an express mitigation clause"). Consequently, since DuPont's actions are not remediating any property damage, but instead are sums spent to prevent further damage, its actions are not insured under the policies.

The Superior Court distinguished *Rhone–Poulenc* on its facts, holding that it did not apply to this case since the policies contain no mitigation provision. Instead, the court seemed to posit its decision concerning coverage, on the absence of any actual monetary payment by DuPont to a third party. The decision of the Superior Court, however, recognized the policy concerns underlying *Rhone–Poulenc* when it held that the definition of property damage did not cover preventive measures.

We disagree with the Superior Court's holding that *Rhone–Poulenc* is inapposite on the question of mitigation. We find, however, that the court's ultimate conclusion that the definition of property damage excluded any coverage for the trial sites is correct. The court reasoned that DuPont's efforts were not pursuant to governmental orders issued in connection with third party damages. Absent an order to pay damages to a third party or cleanup contaminants released from DuPont property, DuPont's expenses are not covered. *See New Castle County v. Hartford Acc. and Indem. Co.*, D.Del., 685 F.Supp. 1321, 1332 (1988).

## B.

■ DuPont also challenges the Superior Court's interpretation of the owned property exception contained in the definition of property damage. The policies at issue define property damage as "injury to or destruction of tangible property (other than property owned by the named Insured)." The Superior Court held this clause unambiguously denies coverage for damages resulting from the destruction of DuPont property.

DuPont urges this Court to adopt the reasoning of *Patz v. St. Paul Fire & Marine*

*Ins. Co.*, 7th Cir., 15 F.3d 699 (1994) (applying Wisconsin law). In *Patz*, the Seventh Circuit characterized the cleanup of the insureds' owned property pursuant to governmental regulation as remediating a public nuisance and the fact that the cleanup occurred on the insured's own land to be irrelevant. *Id.* at 705. The *Patz* court accordingly held that liability insurance with an owned property exception did not preclude coverage of certain items of damage on an insured's owned property.

In order to adopt the reasoning of *Patz*, we would have to ignore the clear and unambiguous language of the policies at issue, as well as the well-reasoned and predictable law cited above regarding the construction of insurance policies. *Patz* ignores the Owned Property Exception; it holds that the Property Damage Definition in essence trumps the Owned Property Damage Definition when the government imposes remedial measures upon the insured, who undertakes the remediation involuntarily. Although the *Patz'* decision is understandable in light of its facts which depict a highly sympathetic insured who received erroneous advice from regulatory authorities, we do not find it persuasive.

■ We are not inclined to recharacterize environmental pollution as a public nuisance in order to evade the owned property exception. Although not binding, the decision in *Monsanto Co.* is persuasive. Applying contract interpretation principles similar to Delaware law, the court concluded that the owned property exception was unambiguous and had to be interpreted according to its plain language. The Superior Court held that "costs for remedial measures taken on the insured's property to prevent third party property damage are precluded from coverage under the operation of the owned property clause." *Id.* at *8. We agree with this interpretative approach and adopt it as controlling Delaware law.

A similar result was reached by the Supreme Court of New Jersey in *State v. Signo Trading Intern., Inc.*, 130 N.J. 51, 612 A.2d 932 (1992). In that case, the insured took measures to cleanup its own property and to prevent contaminants from spreading to neighboring properties. The insured sought liability coverage for on-site cleanup efforts undertaken at the insistence of State environmental authorities. In a sharply disputed 4–3 decision, the Supreme Court upheld a denial of coverage under the "owned property" exclusion. Although the Court's analysis focused on the owned property exclusion, it was informed by the overall purpose of the liability policy. *See Id.* 612 A.2d at 938; *accord Monsanto v. Aetna Cas. & Sur. Co.*, Del.Super., No. 88C–JA–118, Ridgely, J., 1994 WL 317557, at *7 (April 15, 1994) (*Monsanto III* ).

The policy's definition of property damage does not encompass "threatened harm" even if that threat is "imminent" and "immediate." Thus, under its clear terms, the policy does not cover the costs of cleanup performed by or on behalf of an insured on its own property when those costs are incurred to alleviate damage to the insured's own property and not to the property of a third party....

*Signo*, 612 A.2d at 938 (citations omitted).

■ In our view, the plain meaning of the language contained in the owned property exception and the purpose of liability policies in general, both require the result that coverage not be provided for measures taken on an insured's property unless it is in response to damage to third party property. The implication for this case is that the majority of DuPont's expenses must be excluded.

Our affirmance of the Superior Court's ruling leaves somewhat unsettled the question of coverage for groundwater pollution to the extent that groundwater under DuPont owned sites is the property of third parties. As previously noted, the Insurers disputed third party ownership of groundwater under DuPont property but have not cross-appealed from the Superior Court's holding to the contrary. Coverage for the "damages" inflicted on that property may be available to the extent the expense incurred in responding to those "damages" may qualify for liability coverage, provided these expenses are not deemed remediation and thus barred under this court's holding in *Rhone–Poulenc*. Insurers appear to concede the possibility of such coverage if these damages are estab-

lished with specificity. The present state of the record does not permit us to do more than articulate the caveat. We leave to the Superior Court, and future development at trial, the question of whether such proof will support coverage.

\* \* \* \* \* \*

Although we do not endorse the entire rationale for the Superior Court's grant of partial judgment in favor of the Insurers and its denial of DuPont's partial summary judgment motion, we conclude that the record supports such holdings as a matter of law. Accordingly, we AFFIRM both rulings.