## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

SLH General Contractor, Inc.,    )
    )
    Plaintiff-Below/Appellant    )
    )    Case No. CPU4-19-001661
    v.    )
    )
AMBIENCE INC.,    )
    )
    Defendant-Below/Appellee.    )

Submitted: December 17, 2020
Decided: March 4, 2020

Donald L. Gouge, Esq.
800 N. King Street, Suite 303
Wilmington, DE 19801
*Attorney for*
*Plaintiff-Below/Appellant*

James J. Haley, Esq.
Ferrara & Haley
1716 Wawaset Street
Wilmington, DE 19806
*Attorney for*
*Defendant-Below/Appellee*

## DECISION AFTER TRIAL

This matter is an appeal *de novo* brought pursuant to 10 *Del. C.* § 9570 *et. seq.* from a Justice of the Peace Court decision dated March 29, 2019. Plaintiff-Below/Appellant SLH General Contractor, Inc. ("SLH") timely filed a notice of appeal and complaint with this Court on April 10, 2019, alleging that Defendant-Below/Appellee Ambience Inc. ("Ambience") breached an agreement between the parties and, as a result, SLH suffered damages in the amount of $10,800.00.

A bench trial was held on November 17, 2019. At trial, the Court heard testimony from five witnesses. The following witnesses testified during SLH's case-in-chief: Ernest Shepherd, co-founder/owner of Ambience; Beth Ferguson, an administrative employee of Ambience; Shawn L. Harrison, a general contractor, and; Shaunda Harrison, a property manager for Shawn L. Harrison Enterprises Inc. ("Harrison Enterprises"). The following witnesses testified for the defense: John Behornar, a plumbing and mechanical plan examiner for the New Castle County Department of Land Use; Aaron Pricket, a New Castle County code enforcement officer, and Ernest Shepherd. Documentary evidence was submitted by both parties. At the conclusion of trial, the Court reserved decision. This is the Court's Final Decision and Order.

The parties agree that a contract existed, pursuant to which Ambience was to perform HVAC work at SLH's rental property. The parties agree that various events resulted in the project being delayed. The issues before the Court are whether and at what point a material breach occurred, and whether the injured party is entitled to damages as a result.

## FACTS

Based on the testimony presented at trial and exhibits admitted into evidence, the Court finds the following relevant facts:

The events culminating in this litigation occurred between November 2017 and May 2019. By the start of that period, Ambience, an HVAC company, had an

2

established working relationship with Harrison Enterprises, a property management company, dating back a few years. On November 13, 2017, at the request of Harrison Enterprises, Ambience agreed to perform HVAC work on a property owned by SLH, located at 25 South Street in New Castle, Delaware (the "South Property"), for a fee of $3,600 (the "Agreement").[1] It was customary for Ambience to be paid after work was complete, but in this instance, Ambience was pre-paid in full on November 17, 2017.[2]

The terms of the Agreement were not memorialized in a formal written contract; rather, Ambience issued an invoice to Harrison Enterprises that broadly described the work to be performed.[3] Pursuant to the Agreement, Ambience was required to obtain a permit from New Castle County Department of Land Use (the "County"), supply and install a gas furnace, install a gas line, repair any leaks, and complete the gas test with the County and, once all such work was completed, conduct a final inspection with the County. By all accounts, the parties did not specify a time by which this work was to be completed.

On December 11, 2017, Harrison Enterprises instructed Ambience to delay work on the South Property for "a week or two" because it was "dealing with an issue there."[4] Meanwhile, Harrison Enterprises proceeded to enter a rental lease agreement with a tenant, whereby the tenant agreed to rent the South Property at a rate of $900

---

[1] Pl. Ex. 1, Tab 1.
[2] *Id.*
[3] *Id.*
[4] Pl. Ex. 1, Tab 4.

3

per month for a period of 12 months (the "Rental Lease").[5] The Rental Lease was dated December 15, 2017—only a few days after Ambience had been instructed to delay work—but the term of the lease was to commence two weeks later, on January 1, 2018.[6]

On December 22, 2017, Harrison Enterprises informed Ambience that it could proceed with the inspection.[7] Ambience advised that such would not occur until the New Year; Harrison Enterprises assented to that timetable.[8] Acting earlier than projected, on December 29, 2017, Ambience submitted an application for a permit to the County,[9] and subsequently informed Harrison Enterprises that it could "take a couple weeks" for the permit to be issued.[10]

At some point in January 2018, Ambience notified Harrison Enterprises that the County would not issue a permit due to outstanding property taxes on the South Property. On January 30, 2018, Harrison Enterprises made two property tax payments on the South House.[11]

On March 4, 2018, a few weeks after Harris Enterprise's email advising that the taxes had been paid,[12] Ambience notified Harrison Enterprises that unpaid property

---

[5]  Pl. Ex. 1, Tab 3.
[6]  *Id.*
[7]  Pl. Ex. 1, Tab 4.
[8]  *Id.*
[9]  Def. Ex. 2.1.
[10]  Pl. Ex. 1, Tab 4.
[11]  Def. Ex. 1.1.
[12]  Pl. Ex. 1, Tab 2.

4

taxes remained outstanding, and the County would not let Ambience proceed with the permit until all property taxes were paid.[13] A month later, on April 5, 2018, Harrison Enterprises made a payment satisfying all outstanding property taxes.[14]

On May 9, 2018, Ambience advised that, due to recent litigation regarding its company name, it could not obtain the permit until the company name was changed. Ambience indicated that the issue would be resolved and the permit would be pulled "soon."[15] The following week, on May 17, 2018, the County received payment from Ambience for the permit fee; however, a permit was not issued at that time.[16]

On June 11, 2018, Harrison Enterprises again reached out to Ambience for a status update.[17] Ambience apologized, and indicated that it had not been able to go to the County due to limited employee availability at that time, but assured Harrison Enterprises that obtaining the permit would be taken care of as soon as possible.[18]

The permit was finally issued on June 13, 2018.[19] The permit was valid for three months, expiring in mid-September.[20] After the permit was issued, Ambience commenced work on the South Property, installing a gas line and new furnace. Once

---

[13]   Pl. Ex. 1, Tab 4.
[14]   Def. Ex. 1.1.
[15]   Pl. Ex. 3.
[16]   Def. Ex. 1.2.
[17]   Pl. Ex. 1, Tab 4.
[18]   *Id.*
[19]   Def. Ex. 2.3.
[20]   *Id.*

the gas line and furnace were installed, Ambience was required to conduct a gas test with the County before proceeding to the final inspection.

On August 13, 2018—roughly two months after the permit was issued, and nearly one month before the permit would expire—Harrison Enterprises inquired as to when the work on the South Property would be complete.[21] Ambience advised that it hoped to have the gas test scheduled the following week.[22] Indicating some reservation, Harrison Enterprises responded that it was working on other properties in New Castle County, and that an "inspector always comes out within 1-2 days max."[23] Ultimately, the gas test went forward just a few days after this exchange, on August 16, 2018.[24] That same day, Ambience advised that Harrison Enterprises was required to install a gas meter and louver doors before the final inspection could be scheduled.[25] Harrison Enterprises responded that it understood the requirements.[26]

On August 30, 2018, Harrison Enterprises notified Ambience that the South Property was ready for final inspection.[27] The next day, Ambience advised that the final inspection was scheduled for the County's earliest available date on September 7, 2018;[28] however, the final inspection did not go forward as scheduled because Harrison

---

[21] Pl. Ex. 1, Tab 4.
[22] *Id.*
[23] *Id.*
[24] Def. Ex. 1.2.
[25] Pl. Ex. 1, Tab 4.
[26] *Id.*
[27] *Id.*
[28] *Id.*

Enterprises had failed to install the gas meter, without which the final inspection could not be completed.

The amicable relationship between Harrison Enterprises and Ambience became inimical on September 19, 2018. Harrison Enterprises sent a text message to Ambience letting it know that the gas meter had been installed.[29] In response, Ambience asserted that it would not proceed with the final inspection at the South Property until Harrison Enterprises paid the balance on an outstanding invoice for work Ambience had performed on another, unrelated property.[30] Replying, Harrison Enterprises asserted that it did not "own or have anything to do with" that property, and noted that it had "missed almost a year of rent" on the South Property.[31] Harrison Enterprises further stated that it had already made payment for the work on the South Property, and indicated that it would contact its attorney regarding the matter.[32] At that point, Ambience ceased all communications with Harrison Enterprises.

On November 2, 2108, SLH filed suit against Ambience in the Justice of the Peace Court. On March 29, 2019, the Justice of the Peace Court entered a Decision and Order, finding in favor of Ambience and dismissing the case with prejudice. Thereafter, Ambience reached out to Harrison Enterprises indicating that it would

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

schedule the final inspection on the South Property.[33] The final inspection was completed on May 13, 2019.[34]

## PARTIES' POSITIONS

It is SLH's position that Ambience failed to timely perform the agreed-upon HVAC work, which constituted a material breach of the Agreement and, as a result, SLH suffered damages in the amount of $10,800 in lost rental income commencing January 1, 2018.[35] Ambience contends that any delay in completing the HVAC work was attributable to Harrison Enterprises, and that SLH failed to mitigate damages after the relationship between Harrison Enterprises and Ambience dissolved in September 2018. Ambience further argues that SLH failed to prove damages in the amount sought in that the property was uninhabitable when Ambience completed the final inspection in May 2019, and remained uninhabited for months thereafter.

## DISCUSSION

To prevail on a claim for breach of contract, the plaintiff must prove, by a preponderance of the evidence, that: (1) a contract existed between the parties; (2) breach by the defendant of an obligation imposed under the contract; and (3) damages

---

[33] Pl. Ex. 1, Tab 2.

[34] Def. Ex. 1.2.

[35] In its complaint, SLH seeks $10,800 in damages. At trial, SLH alleged varying damages figures, ranging from $14,400 to $15,300. For the reasons discussed *infra*, the Court need not reconcile the inconsistencies in the sum of damages sought by SLH.

to plaintiff resulting from that breach.[36] As the finder of fact in a bench trial, the Court must weigh the credibility of witnesses and resolve the conflicts in their testimony.[37]

### a. SLH Is An Intended Third-Party Beneficiary

As an initial matter, although SLH framed its legal claim as a direct breach of contract action, no evidence was adduced at trial to prove that a contract existed between SLH and Ambience; rather, the undisputed contract upon which SLH's claim is based was strictly between Ambience and Harrison Enterprises.[38] Generally, only parties to a contract have standing to sue when the contract is breached; however, Delaware law permits a third-party to recover where the parties to the underlying contract intended to confer a benefit to that third-party.[39] Thus, SLH can recover under the Agreement only if it was an intended third-party beneficiary.

A third-party's right to recover contractual damages turns on the intent of the contracting parties.[40] "To create third party beneficiary rights, a contract should confer an intended benefit on the third party, and the conferral of such benefit must be a material part of the contract's purpose."[41] Where the benefit to the third-party was not

---

[36] *VLIW Techn., LLC v. Hewlett Packard Co.*, 840 A.2d 606, 612 (Del. 2012); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).

[37] *See Johnson v. State*, 929 A.2d 784 (Del.2007) (TABLE); *In re 2004 Harley Davidson VIN No. 1VF9FV31A84R116374*, 2011 WL 601440, *3 (Del. Super. Feb. 2, 2011); *Pencader Associates, LLC v. Synergy Direct Mortgage Inc.*, 2010 WL 2681862, *3 (Del. Super. June 30, 2010).

[38] *See* Pl. Ex. 1.

[39] *Willis v. City of Rehoboth* Beach, 2004 WL 2419143, *1-2 (Del. Super. Oct. 14, 2004); *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. 1990).

[40] *Id.*

[41] *Greater New York Mut. Ins. Co v. Travelers Ins. Co*, 2011 WL 4501207, at *3 (D. Del. Sept. 28, 2011).

contemplated and was merely fortuitous, such third-party will not be conferred rights under the contract.[42] Whether a third-party was an intended beneficiary is "essentially a question of interpretation."[43] It is not essential for the third-party to be specifically named in the contract; rather, intent to benefit the third-party can be inferred.[44]

Here, it is clear that the parties to the Agreement (Harrison Enterprises and Ambience) intended to confer a benefit to SLH, and that such intended benefit was material to the Agreement. The very purpose of the Agreement was to provide HVAC work at the South Property that, to the knowledge of all, was owned by SLH. I find that SLH is a third-party beneficiary, and thus has the right to pursue a claim for breach of the Agreement.

### b. Material Breach

The existence of the Agreement between Ambience and Harrison Enterprises is not disputed. The issue, then, is whether and at what point there was a material breach of the Agreement. A party will be excused from performance under a contract if the other party materially breaches the contract.[45] Inversely, a slight breach by one party does not necessarily extinguish the injured party's obligation to perform under the

---

[42]   *Delmar News, Inc.*, 584 A. 2d at 535.
[43]   *Willis*, 2004 WL 2419143, at 2.
[44]   *See id.; Greater New York Mut. Ins. Co.*, 2011 WL 4501207, at *2-3.
[45]   *Preferred Investment Services, Inc.. v. T & H Bail Bonds, Inc.* 2013 WL 3934992 (Del. Ch. July 24, 2013); *Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, *19 (Del. Super. Aug. 31, 2006)("performance under a contract is justifiably excused when the other party to the contract commits a material breach").

10

contract.[46] "[W]hether the breach is of sufficient importance to justify non-performance by the non-breaching party is one of degree and is determined by weighing the consequences in the light of the actual custom of men in the performance of contracts similar to the one that is involved in the specific case."[47]

In determining whether a breach is material, Delaware courts consider the following factors, as set forth in the Restatement (Second) of Contract, § 241:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[48]

In the present case, both parties argue, in essence, that the other breached the contract first, thereby justifying non-performance. Certainly, both parties were not fully compliant in satisfying their contractual duties. Harrison Enterprises breached its implicit obligation to render the South Property free of any encumbrances that would hinder the issuance of the permit. Ambience breached the contract by failing to

[46] *Id.; see also Simon-Mills II, LLC v. Kan Am USA XVI Limited Partnership*, 2017 WL 1191061, *29 (Del. Ch. March 30, 2017); *Daystar Const. Management, INc. v. Mitchell*, 2006 WL 2053649, *7 (Del. Super. July 12, 2006).

[47] *BioLife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, at 278 (Del.Ch.2003)(quoting *Eastern Elec. and Heating, Inc. v. Pike Creek Professional Center*, 1987 WL 9610, *4 (Del. Super. April 7, 1987)).

[48] *Restatement (Second) of Contracts* § 241 (1981); *see BioLife Solutions*, 838 A.2d at 278; *Carey v. Estate of Myers* 2015 WL 4087056, *20-21 (Del. Super. July 1, 2015); *eCommerce Industries, Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678, *13-14 (Del. Ch. Sept. 30, 2013).

diligently pursue the permit from the County. However, such breaches were minor, especially when considered in the context of the parties' course of dealings. It is clear from the evidence presented that delays were par for the course in transactions between Harrison Enterprises and Ambience. Furthermore, regarding the South Property, neither party expressed concern with the delays until August 13, 2018, at which time Harrison Enterprises ostensibly indicated skepticism regarding the anticipated timeframe for scheduling the gas test. Notably, the gas test did go forward within a few days as Harrison Enterprises envisioned.

However, the mutual minor breaches gave way to a material breach of the Agreement by Ambience when it refused to proceed with the final inspection in September 2018. At that point, Ambience effectively abandoned the project, and by every indication did not intend cure its failure to perform. I find that this breach was not made in good faith. Harrison Enterprises indicated that the unpaid invoice was from a property unrelated to SLH, yet Ambience made no effort to engage in resolution of the issue, and instead ceased all communication with Harrison Enterprises.

Considering the factors delineated in Section 241 of the Restatement (Second) of Contracts, I find that Ambience's refusal to proceed with the final inspection was a material breach of the Agreement. As third-party beneficiary, SLH is entitled to recover for damages consequent to Ambience's material breach.

## c. Damages

SLH's burden as to damages hinges on whether the damages it seeks to recover are considered direct or consequential.[49] The principal distinction between direct and consequential damages is the degree of foreseeability.[50] Direct damages are those intrinsic to the breach, which "necessarily and naturally [result] from the wrongful act or omission."[51] Consequential damages, also known as special damages, "are those that result naturally but not necessarily from the wrongful act, because they require the existence of some other contract or relationship."[52]

Lost profits may properly be categorized as direct damages or consequential damages, depending on their nature.[53] Profits lost on the underlying contract itself are considered direct damages.[54] Conversely, profits lost on other tangential contracts are considered consequential.[55]  In *eCommerce Industries, Inc. v. MWA Intelligence, Inc.*, the Court of Chancery adopted the Second Circuit's methodology and held that:

> "lost profits are considered consequential damages when 'as a result of the breach, the non-breaching party suffers loss of profits on collateral

---

[49] *Pharmaceutical Product Development, Inc. v. TMB Life Science Ventures VI, L.P.*, 2011 WL 549163, *6-7 (Del. Ch. Feb. 16, 2011).

[50] *Id.*

[51] *Twin Coach Co. v. Chance Cought Aircraft, Inc.*, 52 Del. 588, at 603 (Del. Super. 1960).

[52] *Bonanza Restaurant Co. v. Wink*, 2012 WL 1415512, at * 3 (Del. Super. April 17, 2012); *eCommerce Industries, Inc.* 2013 WL 5621678, at *47 ("Black's Law Dictionary defines consequential damages as 'losses that do not flow directly and immediately from an injurious act but that result indirectly from the act'"); *Twin Coach Co.*, 52 Del. 588, at 603 (Del. Super. 1960) (defining special damages as "those which are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case, that is, by reason of special circumstances or conditions").

[53] *eCommerce Industries, Inc.*, 2013 WL 5621678, at *47.

[54] *Id.*

[55] *Id.*

business arrangements'. By contrast, lost profits are not considered consequential damages when 'profits are precisely what the non-breaching party bargained for, and only an award of damages equal to lost profits will put the non-breaching party in the same position he would have occupied had the contract been performed.'"[56]

The lost rental income SLH seeks to recover stemmed from the Rental Lease, which was collateral to the Agreement and in no way represented what the parties to the Agreement bargained for. Accordingly, I find that the lost rental income falls within the definition of consequential damages. As such, SLH is entitled to recover reasonably certain consequential damages,[57] provided that SLH properly mitigated damages.

It is well-established under Delaware law that the measure of damages is attenuated by the principle that the injured party is required to mitigate damages, regardless of whether mitigation is expressly prescribed in the underlying contract.[58] The injured party's duty to mitigate commences after the offending party materially breaches the contract.[59]

Here, SLH's obligation to mitigate damages was triggered when Ambience materially breached the agreement on September 13, 2018. At that time, the only work outstanding was scheduling and completing the final inspection with the County. At

---

[56]   *Id.* (quoting *Tractebel Energy Marketing v. AEP Power Marketing*, 487 F.3d 89 (2d Cir.2007)).

[57]   *See Donald M. Durkin Contracting, Inc. v. City of Newark*, 2008 WL 952984 at *2 (D.Del. Apr. 9, 2008).

[58]   *Hanner v. Rice*, 2000 WL 303458 (Del. 2000); *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647, *25 (Del. Ch. Nov. 17, 2014); *E.I. du Pont de Nemours & Co. v. Allstate*, 686 A.2d 152, 156 (Del.Super.1996).

[59]   *See id.*; *NASDI Holdings, LLC v. North American Leasing, Inc.*, 2019 WL 1515153, *7 (Del. Ch. April 8, 2019).

trial, Shaun Harrison, a general contractor himself, testified that Harris Enterprises made no effort to hire a new contractor to finish the final inspection because it was "illegal" to do so. However, John Behornar, an employee of the County, testified that the contractor changes are not prohibited and, in fact, the County has a change of contractor procedure in place. I find the testimony of Mr. Behornar to be credible, and hold that SLH had a duty to mitigate damages by retaining a new contractor to perform the final inspection. Accordingly, SLH's recovery shall be limited damages it would have received had it satisfied its duty to mitigate.

Although consequential damages need not be demonstrated with mathematical precision, damages cannot be speculatively estimated; the burden is on the plaintiff to "lay a reasonable foundation by which the Court may estimate their loss."[60] To that end, "a plaintiff may not recover damages for loss of income tortiously caused without providing the trier of fact with 'some reasonable basis upon which a jury may estimate with a fair degree of certainty the probable loss which the plaintiff will sustain.'"[61]

---

[60] *LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007); *see Preferred Investment Services, Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *25 (Del. Ch. July 24, 2013).

[61] *Moody v. Nationwide Mut. Ins. Co.*, 549 A.2d 291 (Del. 1988); *see eCommerce Industries, Inc.*, 2013 WL 5621678, at *19 ("A plaintiff must prove its damages 'with a reasonable degree of precision and cannot recover damages that are 'merely speculative or conjectural'"); *Pharmathene, Inc. v. SIGA Tech., Inc.*, 2010 WL 4813553, at *11 (Del. Ch. Nov. 23, 2010)( "Under Delaware law, a plaintiff can only recover those damages which can be proven with reasonable certainty"); *Callahan v. Rafail*, 2001 WL 283012, at *1 (Del. Super. March 16, 2001)("No recovery can be had for loss of profits which are determined to be uncertain, contingent, conjectural or speculative"); *LaPoint*, 2007 WL 2565709, at *9 ("plaintiffs must show that the injuries suffered are not speculative or uncertain, and that the Court may make a reasonable estimate as to an amount of damages"); *Cura Financial Services N.V. v. Electronic Payment Exchange, Inc.*, 2001 WL 1334188, at *19 (Del. Ch. Oct. 22, 2001).

15

Here, SLH has not provided any reasonable basis by which damages could be estimated with a fair degree of certainty. SLH had opportunity to present evidence establishing the time and cost investment of retaining a new contractor to finish the final inspection. No such evidence was presented, leaving the Court, as the finder of fact, without any barometer by which damages could be measured. Accordingly, the Court has no basis to award damages to SLH.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Defendant-Below/Appellee Ambience Inc. Each party shall bear its own costs.

**IT IS SO ORDERED.**

Alex J. Smalls,
Chief Judge

16